## ELEANOR P. BURKE AND JOHN FATTLE *vs.* JOHN C. R. B. B. CHAMBERLAIN'S LESSEE.

EVIDENCE; PRIVITY: AND EVIDENCE, ADMISSIBILITY OF: PAROL ADMISSIONS: RECEIPT OF WARD TO GUARDIAN.—In EJECTMENT, an instruction to the jury having been granted at the instance of the plaintiff without objection, that a record of proceedings in partition offered in evidence by the defendants, was not evidence of any of the facts stated in the partition, except in order to show with other circumstances color of title, in the event that the defendants should attempt to defend their possession by proof of entry under color of title,—the defendants then offered in evidence the receipt of the lessor of the plaintiff to his guardian, with the sole and specific purpose of showing a privity or connection between the plaintiff's lessor and the proceedings for partition.—HELD:

1st. That the said receipt and transcript were not evidence to connect the plaintiff with the proceedings on the petition for partition.

2nd. That the principal evidence having been excluded without exception on the part of the defendants, the exclusion of subordinate testimony connecting the plaintiff with that already excluded, could not be a subject of exception.

3rd. That the receipt and proceedings in partition were not admissible, as parol admissions, to go to the jury upon the question of title between the plaintiff and defendant, although not offered by way of *estoppel in pais*.

4th. That the said receipt containing no reference to the real estate in controversy, but purporting to be—"in full for my share of the *personal estate* which fell due to me from the estate of my grandfather," bears no resemblance to the class of incidental admissions which have been held not to

differ from direct admissions; nor does it amount to such *conduct* as would constitute evidence between the parties.

5th. That it would be of dangerous tendency to allow a receipt from a ward to his guardian to operate as a direct or incidental admission of all the facts introduced into the accounts of the latter, without specific reference to them.

DEVISE, CONSTRUCTION OF.—Where a testator was seized in fee simple of three parcels of land, devised by his will to his three sons, the said three parcels constituting one entire farm, or plantation on which he resided at the time of making his will, and which was not divided into parcels save as the same were separated by mathematical lines in the will devising the several parts to his children, and the same continued in his possession so undivided until his death, the conclusion seems inevitable, that the whole of that plantation was his "dwelling plantation," and would pass as an unit under the devise of his "dwelling plantation" to his wife for life.

J. C. R. B. B. was the eldest son of T. B., and survived his father,—under whose will he was devisee of an interest in the reversion in the real estate in controversy, dependent upon the life estate of his mother, S. B.,—and also survived his brother R., devisee in tail, who died without issue in 1780. J. C. R. B. B. executed his will on the 16th of June 1797, after his intermarriage with E. H., by whom he had no issue up to that time, but being then the father of two natural children, S. P. B. and E. P. B., acknowledged by him as such, and described in his said will as "my son" and "my daughter." Under these circumstances declaring his intention "to dispose of such worldly estate wherewith it hath pleased God to bless me," he devised (his mother, S. B., then living on the "dwelling plantation,") as follows: "I give and bequeath to my son S. P. B., one silver watch, one half of my household stuff, wagon and horses, and all cattle, together with all farming utensils, *likewise one-half of all and everything that shall fall to me, the said* J. C. R. B. B., *at my mother* S. B's *decease,* to him and his heirs forever."—HELD:

That it is evident the testator did not design to die intestate of any interest in possession or reversion, which he might have been entitled to as heir at law of T. B., after his mother's death.

The testator, J. C. R. B. B., having made to his "daughter" E. P. B. a devise in precisely the same words used in that to his son S. P. B., omitting the concluding words of inheritance.—HELD:

That such omission is not sufficient to repel the presumption in favor of such devise, but must be rather attributed to the unskillfulness of the testator or draftsman of the will.

APPEAL from the Circuit Court for Baltimore County:

*Ejectment* brought by the appellee against the appellants, August the 10th 1854, to recover an undivided

moiety of a parcel of land lying in the said county, and containing about one hundred and sixty acres, the same being part of two tracts, called respectively ''Edward's and Will's Valleys'' and ''Hill's and the Enlargement.'' The defendant appeared, entered into the consent rule and confessed lease entry and ouster. Plea *non cul,* and defence on warrant. At the trial of the cause, by agreement filed, the defence on warrant was waived, and it was agreed that the case should be proceeded with under the plea of not guilty, as if the defence on warrant had never been taken.

The *first bill of exceptions* is taken by the defendants below to the granting of the plaintiff's second prayer and the refusal of the Court below (PRICE, J.,) to grant the defendants' first prayer. The *second exception* is taken by the defendant, E. P. Burke, to the refusal of the Court to grant her prayer. The *third bill of exceptions,* which contains the same prayers and points presented by the first and second, is taken by the plaintiff to the refusal of the Court to grant the plaintiff's third prayer, and to the granting of the defendants' second and third prayers. For a further statement of the case see the opinion of this Court. The verdict of the jury and judgment of the Circuit Court were for the plaintiff, and the defendants appealed.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH, and COCHRAN, J.

*Levin Gale,* for the appellants, argued:

1st. That by the true construction of Thomas Boone's will, his widow took a life estate in the lands in controversy in this cause. 1 *Jarman on Wills,* 617 to 625. *Wigram on Int. of Wills,* 183, (2 *Lib. of Law and Eq.,* 60.)

2nd. That said lands passed under the will of John C. R. B. Boone's will to the Parlot Boones. Same authorities as on first point.

3rd. That the devise in the will of John C. R. B. Boone's will was effectual to pass the estate to the parties defendant. *Alexander vs. Worthington,* 5 *Md. Rep.,* 471.

4th. That the record of the proceedings for partition, and the guardian's account, and the receipt of Chamberlain, should have been admitted as evidence in the cause, and that the first and second prayers of the plaintiff, qualifying such testimony, was erroneous. *Batturs vs. Sellers,* 5 *H. & J.,* 119. *Reeves vs. Middleton,* 2 *H. & McH.,* 414. *Dickinson vs. Coward,* 1 *Barn. & Ald.,* 679. 1 *Greenleaf's Ev.,* secs. 194, 196. *Ridgely vs. Bond,* 18 *Md. Rep.,* 433.

5th. That the proceedings in Baltimore County Court on this petition, and the guardian's accounts in connection therewith, were evidence as hearsay, or as admission of the parties to the cause. 1 *Greenleaf's Ev.,* sec. 106.

6th. That the plaintiff could not recover against Eleanor P. Burke, as she was a married woman and her husband was not a party. 45 *Law Library,* 182. *Browne on Actions at Law,* 250.

7th. In reply to the third point of the appellee's brief he cited 1 *Kent's Com.,* secs. 573, 513. 1 *Jarm. on Wills,* 42, 43, *notes.*

*Thomas S. Alexander* and *A. W. Machen,* for the appellee, argued:

1st. That there was no error in the granting of the plaintiff's second prayer.

That a receipt given by a ward on arriving at age to his guardian for a certain sum of money, as in full of his share of the personal estate coming to him, should have the effect of making such ward a party to a previous partition proceeding, with the expenses of which (or some of

them) the guardian had taken upon him to charge such ward in an Orphans' Court account, resulting in a balance agreeing with the sum thus paid to the ward, will not, we suppose, be seriously contended for. The alleged proceedings for partition were in themselves nugatory and void. Act of 1820, ch. 191, sec. 8.

Neither the defendants, nor those under whom they claim, were parties to the receipt in question, or to the Orphans' Court proceedings. *Estoppels* must be mutual. *Cecil vs. Cecil,* 19 *Md. Rep.,* 79. *Carpenter vs. Howard,* 11 *Md. Rep.,* 259.

And if the receipt and Orphans' Court proceedings could serve to connect the plaintiff with the partition, *cui bono?* It is impossible to maintain that his title can be in any manner affected thereby, or his present action barred. *Casey vs. Inloes,* 1 *Gill,* 430, 493, 495, 501, 502.

II. The first prayer of the defendants was properly refused.

1st. The instructions which were granted certainly put the case as favorably for the defendants as they could reasonably ask. What composed the dwelling plantation of Thomas Boone was a question of fact to be determined by the jury upon the whole evidence.

The prayer improperly assumes that there is evidence that the divisions of the real estate did not exist before the will; but there is nothing in the will to indicate that they had not a previous existence. At any rate, as we find the will recognizing the parcels as distinct and separate, it is but fair to put the burden on the defendants of showing that the dwelling plantation embraced them all.

2nd. But we submit with a great deal of confidence that the bequests to Stephen and Eleanor have no reference to the dwelling plantation at all—nor indeed to any real estate. The rule which restricts general words in a legacy to things *ejusdem generis,* with those particularly mentioned, clearly applies. *McChesney vs. Bruce,* 1 *Md. Rep.,*

344. *Cole vs. Ensor,* 3 *Md. Rep.,* 446. *Walters vs. Walters,* 3 *H. & J.,* 201. *Bullard vs. Goffe,* 20 *Pick.,* 252. *Doe d. Haw vs. Earles,* 15 *M. & W.,* 450. *Woollam vs. Kenworthy,* 9 *Ves.,* 137.

All the circumstances that are usually relied on in support of a restrictive construction concur here. The will no where else disposes of realty. The general term used, "thing," has no special applicability, whether technical or popular use be taken as a standard, to land. On the contrary it is most naturally applied to articles capable of manual delivery—a construction confirmed in this case by the words used in connection with it, "that shall fall to me." The place the words in question occupy, in subordination to things of trivial value, is significant. A man does not ordinarily begin with a silver watch and household stuff, when he has also in his mind to convey several hundred acres of land—all the landed estate he has in his power to dispose of.

The construction which includes the land makes the will unreasonable—for it implies an intention utterly to disinherit his legitimate issue and heirs. Whereas it is quite reasonable that a testator who knows that the law, in the ordinary course of descent, will provide for his legitimate offspring, should divide his personal chattels between his natural children.

If we are right in this point it is clear that not only was there no error in the rejection of the first prayer of the defendants, but the case went to the jury in a much more favorable manner than they were entitled to: and that the learned judge ought to have rejected their other two prayers, and granted our own third prayer, the not doing whereof is the matter excepted to on our part, and brought up in the plaintiff's bill of exceptions.

3rd. On the theory of the appellants, that the land devised by Thomas Boone to his wife Sarah for life, included the land devised in the same will to Richard

Boone in tail, the condition of things thus created was, an estate for life in Sarah, remainder in tail in Richard, and a reversion expectant on the preceding estates to the right heirs of Thomas Boone, the testator. And though the estate tail had expired in 1797, when John C. R. B. Boone made his will, by reason of the prior decease of Richard; yet as Sarah still lived, John was not at that time seized of such an estate as he was capable of devising. Upon the subsequent death of his mother, he then, in the character he at that time happened to fill, of heir of Thomas, became seized of the freehold of inheritance; but this being an interest acquired after the making of his will, could not pass under it.

The power of testamentary disposition extends to all personal estate of which the testator was seized at the time of making the will, which if not devised would have descended to the heir at law. 1 *Jarm. on Wills*, 38. *Swift, dem. of Neale & Wife vs. Roberts*, 3 *Burr.*, 1488.

An interest grantable may not be descendible. There was no descendible interest, no seizen in J. C. R. B. Boone at the time of making the will. *Co. Lit.*, sec. 8, and *note* 14 b. The subsequent acquisition of a descendible interest will not remove the difficulty. The distinction between interests grantable and descendible is recognized in Maryland. The Act of 1798, ch. 101, sec. 1, was passed after the making the will. The Act concedes that before its passage the law was as we contend.

III. There was no error in the rejection of the separate prayer of Eleanor Burke. This defendant having voluntarily come in to defend the action, entered into the consent rule, and pleaded not guilty, could not set up coverture as a bar—even if it could, under any circumstances, avail as a defence in ejectment. It is not pretended that the husband (if such a person existed) was in possession of the land. The plaintiff could by no possibility bring him in. As she herself was in actual occupation, the

plaintiff could not prevent her from appearing and defending, if she chose to do so.

It is to be remarked that the prayer makes the mere fact of the defendant's being a married woman when the declaration was delivered decisive, regardless of the question whether she had not become *sole* when she pleaded. But a judgment in ejectment may well enough be recovered against a *feme covert* living apart from her husband; though it will not be admissible in evidence against her husband, in an action against him for the *mesne profits. Denn vs. White*, 7 *T. R.*, 112.

If a judgment could not be recovered against Mrs. Burke because she was a *feme covert,* it must be held for the same reason that she must not be allowed to plead not guilty to the declaration, and raise an issue before the jury; but if she had not thus pleaded, the plaintiff would have had judgment against the casual ejector. It was not competent therefore for her to make such an objection after going to trial. Coverture must always be pleaded in abatement. 1 *Ch. Pl.*, 93.

It has been held that the plaintiff in ejectment may recover against a married woman who has entered into the common consent rule, even though it appear on the trial that the lessor of the plaintiff is himself the husband of the woman. *Doe d. Morgan vs. Daly,* 8 *Q. B.*, 934, (55 *Eng. Com. Law,* 934.)

BOWIE, J., delivered the opinion of this Court.

The lands in controversy are claimed by the appellee as heir at law of John C. B. Boone, and by the appellants as his devisees, or persons holding under them. The lessor of the plaintiffs is the grandson of Boone, and son of Prudence, the daughter of Elizabeth Hall, his lawful wife. The defendant, Fattle, claims under Stephen Parlot Boone, brother of the defendant Eleanor, which

39        v. 22.

Stephen and Eleanor were the natural children of said Boone, and claimed as his devisees.

Three bills of exceptions appear in the Record. The third is but a recapitulation of the prayers and points presented by the first and second, and need not be further noticed.

The first bill of exceptions is taken to the granting of the plaintiff's second prayer, and the refusal to grant the defendant's first. The Court below having instructed the jury at the instance of the appellee, that the record of the proceedings in partition, offered in evidence by the defendants, was not evidence of any of the facts stated in the partition, except in order to show, with other circumstances, color of title, in the event that the defendants shall attempt to defend their possession by proof of entry under color of title, which instruction was not excepted to. The plaintiffs, (the appellees,) further prayed the Court to instruct the jury as follows: "That conceding the due execution of the receipt of his lessor to Uriah Brown, his guardian, which is offered in evidence by the defendants, and that the same is the original receipt incorporated in the transcript of proceedings of the Orphans Court of Baltimore County,—the said receipt and transcript are not evidence to connect the plaintiff with the proceedings on the petition for partition in this cause."

From the language of this prayer, it would appear that the receipt of the lessor of the plaintiff to Uriah Brown, his guardian, was offered in evidence with the sole and especial object of showing a privity or connection between the plaintiff's lessor and the proceedings for partition. If such was the case, it is difficult to see, how, the principal evidence being excluded without exception on the part of the defendants, the exclusion of subordinate testimony connecting the plaintiff with that which was already excluded, could be a subject of exception.

The appellants contend that this receipt and the proceedings referred to, should be admitted as parol admissions, (not by way of *estoppel in pais*,) but to go to the jury, upon the question of title between the plaintiff and defendant, for which they cite a series of cases, none of which, in our opinion, sustain their position. The receipt in this case, contains no reference to the real estate in controversy, it purports to be "in full for my share of the *personal estate* which fell due to me from the estate of my grandfather," (J. B. C. Boone,) "deceased." It has no resemblance to the class of incidental admissions, which Greenleaf says do not differ from direct admissions, nor does it amount to such *conduct* as would constitute evidence between the parties. It would be of dangerous tendency to allow a receipt from a ward to his guardian, to operate as a direct or incidental admission of all the facts introduced into the accounts of the latter, without specific reference to them.

In the case of *Ridgely vs. Bond & Wife*, 18 *Md. Rep.*, 448, the facts referred to in the original bill, were also set out in a contract or agreement between and by Howard and Sarah Elder and Charles, her husband, filed with the bill as exhibit B, referring to which, this Court said: "This exhibit and the material allegations of the original bill, were admitted by the answer of Charles Elder and wife, who consented to a sale, and prayed the proceeds might be brought into Court, to be distributed under its order, whereupon the Chancellor passed the decree of 1829, for the sale of the land, and directing the proceeds to be brought into Court for distribution. Such decrees do not fix the rights of the parties, (*Fitzhugh vs. McPherson*, 9 *G. & J.*, 76;) but it is apprehended that Sarah Elder, and all claiming under her would be *estopped* by the admissions of the deed recognized and confirmed by her answer of 1826." There was no error in our opinion, in the plaintiffs' second instruction, to the granting of which the defendant excepted.

The 2nd point presented by the 1st bill of exceptions arises on the refusal to grant the defendant's first prayer. "That if the jury shall find from the evidence that Thomas Boone was seized in fee simple of three parcels of land devised by his will, offered in evidence by plaintiff, to his three sons, and shall find that the said three parcels constitute one entire farm or place upon which the said Thomas Boone resided at the time of making his said will; that he had no other farm or plantation, and that the said parcels so devised to his sons were not, in fact, during his lifetime, separated by the courses and distances mentioned in said will, or by any similar divisions, but were occupied by said Thomas Boone as a whole, then, by the true construction of the will of the said Thomas Boone, all of the said parcels constituted the dwelling plantation devised to his wife, Sarah Boone, for her life."

The object of this prayer was to determine and fix by an instruction of the Court, on the minds of the jury, the true construction of the words "dwelling plantation."

Assuming it to be the province of the Court to interpret the meaning of the will, it is difficult to conceive any circumstance or condition which would constitute or comply with the description "dwelling plantation," not included in the defendant's first prayer. All the facts enumerated, are put hypothetically, and submitted to the jury to find; none are assumed. If the testator had but one farm or plantation which he resided on at the time of making his will, and which was not divided into parcels, save as the same were separated by mathematical lines in the will, devising the several parts to his children; and the same continued in his possession so undivided until his death, the conclusion seems inevitable, the whole of that plantation was his dwelling plantation, and would pass as a unit under the devise of his dwelling plantation to his wife, Sarah Boone, for life.

It is said, however, the appellants were not prejudiced by this prayer, because the jury by the second of the defendant's prayers (which was granted) were instructed if they found the testator Thomas Boone was seized of the "*locus in quo,*" and the same was a part of the "dwelling plantation" of the said Thomas, at the time he made the will offered in evidence by the plaintiff, then the same passed by virtue of said will to the wife. It is to be remembered, that the object of the first prayer was to avoid the necessity of convincing the jury of what the "dwelling plantation" consisted; to establish by the authority of the Court the position that the "dwelling plantation" included all the land devised by Thomas Boone's will; from which the necessary consequence ensued, that the part then in dispute passed to his wife. Under the second instruction, the jury might find otherwise. The objection that there was no evidence of the holdings, on which the prayer was based, cannot apply to a will executed nearly a century past: it was impossible in the nature of things there should be living witnesses; if any record evidence of subdivisions existed, the plaintiff's lessee could have produced them; the will itself was evidence, though slight, that the subdivisions were made "*pro hac vice,*" there being no reference in any of them to any other possessor, than the testator, or any tenement upon them.

That J. C. B. Boone had a devisable interest, in the reversion dependent upon the estate for life in Sarah Boone, cannot be doubted. *Cruise Dig., Tit. "Devise,"* ch. 3, *secs.* 1, 22, 24. "While the estate is thus in expectancy, the *mesne* heir, in whom the reversion or remainder rests, may do acts, which the law deems equivalent to an actual seisin, and which will change the course of the descent and make a new stock: Thus, he may by a grant or *devise of it,* or charge upon it, appropriate it to himself and change the course of the

descent." *Vide Cook vs. Hammond,* 4 *Mason,* 485, STORY, J. John C. B. Boone, was the eldest son of Thomas, and survived his father, and his brother Richard, devisee in tail, who died without issue in 1780.

John C. B. Boone executed his will on the 16th of June 1797, after his intermarriage with Elizabeth Hales. Their marriage occurred on the 16th June 1791, as appears from the certificate, and it is a fair deduction from the absence of all testimony to the contrary, and the silence of his will, that the marriage had been unfruitful up to that time. He was then the father of two natural children acknowledged by him as such, and described afterwards in his will as "my son" and "my daughter." Under these circumstances, declaring his intention to dispose of such worldly estate, wherewith it had pleased God to bless him, he devises (his mother being then living on the dwelling plantation,) as follows: "I give and bequeath to my son, Stephen Parlot Boone, one silver watch, one-half of all my household stuff, wagon and horses, and all cattle, together with all farming utensils, likewise one-half of all and everything *that shall fall to me, the said John Cockey Burley Boone,* at my mother Sarah Boone's decease, to him and his heirs forever." This will was made, according to its preamble, when the testator was "very sick and weak in body." He could not have entertained any hope of future offspring, and perhaps but little of recovery. It is evident that under the circumstances, he did not design to die intestate of any interest in possession or reversion, which he might have been entitled to, as heir at law of Thomas Boone, after his mother's death. The omission in the devise to Eleanor Parlot Boone, of the words of inheritance used in the devise to Stephen, is not sufficient to repel the presumption sustained by so many cogent reasons, but must rather be attributed to the unskilfulness of the testator, or draftsman. The conclusion from these

premises is that the Court below erred in refusing the defendant's first prayer.

The 2nd bill of exceptions presents the question whether the plaintiff can recover in ejectment, against the defendant, Eleanor Burke, she being a *feme covert*, at the time of the delivery of the declaration on ejectment, and her husband not joined with her in the pleadings. The defendant, Eleanor, as appears by the record, entered into the consent rule, and confessed lease entry, and ouster; after which she pleaded not guilty separately, waiving by that plea the benefit of coverture. Pleas in abatement are never *favored*, and to let the defendant set up her coverture after issue joined on the merits, would operate as a surprise, and defeat the policy of the law regulating such defences. The case of *Doe demise of Merigan vs. Daly*, 55 *Eng. C. L. Rep.*, 934, is strongly analagous; in that case Lord Denman held, that a tenant on the demise of the husband, might recover against the wife who held possession, and had entered into the consent rule. His language is very strong and apposite: "we do not see how this defendant can avoid the effect of the consent rule, which puts in issue nothing but her title. It is said that there is such common interest of husband and wife in his property, that she cannot by law be guilty of trespass upon it. We cannot accede to this doctrine as applicable to an ejectment, for the relation of husband and wife certainly does not justify her in taking forcible possession of his property to his exclusion. There are technical difficulties in an ·adverse proceeding between married persons which are raised for the purpose of defeating justice, by restoring to the owner land unlawfully held from him. But this attempt is successfully met by a technical answer, for John Doe claiming under a demise from the husband, and *not the husband himself*, is the plaintiff on the record. If a tenant claiming under a demise from the husband, may recover in this form of

action against the wife, we see no reason why those claiming under third persons may not. The objection of coverture seems, if possible, more strongly presented in the former case. The instruction prayed by the defendant, Eleanor Burke, was, in our opinion, properly refused, but there being error in the refusal of the defendant's first prayer, as before shown in this opinion, the judgment below must be reversed.

*Judgment reversed with costs to the appellants, and procedendo awarded.*

(Decided November 17th 1864.)