FANNIE R. ROBINSON ET AL., APPELLANTS, VS. MARY E. RANDOLPH ET AL., APPELLEES.

1. No technical words are necessary to a devise of a fee simple estate in land. The word *property*, in the words of gift, or dispositive part of a will, carries the fee or other entire interest of the testator in the land, unless it is otherwise shown by the will that it was his intention to give a less estate.

2. Where the intention of a testator to give a fee or other entire interest in the land does not clearly appear from the words used in the clause of the will devising the land, resort may be had to the introductory clause to explain their meaning; and where the word *property* is so used in the former clause as to leave a doubt as to the testators's intention, and the same word is used in the latter clause, and such clause clearly shows an intention upon his part to dispose of all his estate, it will be held that the fee, or other entire interest in the land, was intended to be given and passes to the devisee, the other parts of the will consisting with such an intention.

3. No particular form of words is necessary to the creation of a separate equitable estate. It may be declared in express terms, or inferred from the provisions of the settlement as to the mode of enjoying it.

4. The alienation of a separate equitable estate may be restrained during the grantee's coverture, and it is no objection to the validity of the restriction that it was made while she was unmarried.

5. Restraint upon the right of a daughter to dispose of her real estate during coverture may be annexed by a testator to the separate equitable estate although the devise took effect while the daughter was single. The restraint is not effectual while she is single. If before disposing of the real estate she marry, the restraint becomes effectual upon and continues throughout such marriage. Should she become discovert and marry again without having disposed of the property the restraint again becomes effectual for such subsequent marriage.

6. A father devised eighty acres of land to his daughter. Considering the item giving it to her, and other parts of the will, it is held that he gave his entire interest in the land. The same item of the will provides as follows : "I desire it to be well improved and to have a good tenement house built upon it. This property I desire to secure to her so that neither she nor her husband can ever dispose of it. I appoint J. J. D., trustee, to support these bequests according to the tenor of the same." Subsequently to the testator's death the daughter married, and is still under coverture : *Held*, That the legal title is in the trustee, and that the property is the daughter's separate, equitable estate, subject during coverture to the restraint imposed upon the power to dispose of it.

7. Parol testimony held not admissible to enlarge or alter the estate devised by a will.

Appeal from the Circuit Court for Orange county.

The appellants, Fanny R. Robinson and Benjamin M. Robinson, her husband, filed their bill in the court below against Mary Ellen Randolph, the widow of William M. Randolph, deceased, and the executrix of his will, James J. Daniel, trustee under said will, and against the devisees and heirs of said William M. Randolph. The bill prayed that the title of said Fanny R. Robinson, under said will, to a piece of land called " Fanlock," and otherwise described in the bill, be declared to be " a legal estate in fee

simple absolute in accordance with the intention and desire of the said William M. Randolph, deceased;" that the court declare and decree that the following clause in said will, namely, " this property I desire to secure to her so that neither she nor her husband can ever dispose of it," is a " repugnant condition " and null and void, " and to confirm to your oratrix the right to sell and convey the lands devised to her by the said will as if the said clause had never existed."

Several witnesses were examined as to the " intention," " desire " and " design " of testator in making the devise of the " Fanlock " place.

The will in question reads as follows :

" Fanlock, on Lake Conway, Orange county, Florida, 23d of July, 1875.

" This is my last will :

" I give to my God my soul, and ask him in the name of my Lord and Saviour Jesus Christ to accept it. I also ask his blessing on the following disposition of the property with which he has seen fit to intrust me :

" First. I desire the eighty acres, purchased by me from W. A. Patrick, known as ———, on Lake Conway, aforesaid, to be improved as it may be convenient to do so and planted in oranges, say one thousand, and also in some plums and guavas, and I hereby give the same and its revenues to my grandson, William Randolph Harney. He is not, however, to have possession until he is twenty-five years old. If he dies, his father shall have a life estate in it, and after his death it is to revert to my heirs.

" Second. I give the other eighty acres bought by me from said Patrick, situate on Lake Conway, aforesaid, to my daughter, Fanny. The place is called Fanlock. I desire it to be well improved, and to have a good tenement house built upon it. This property I desire to secure

to her so that neither she nor her husband can ever dispose of it. I appoint my friend, J. J. Daniel, trustee, to support these bequests according to the tenor of the same.

"Third. I desire my wife to build a good house for my son. I give to my son my gun and watch.

"Fourth. I give to my friend,' R. H. Brown, my fishing rod and reel.

"Fifth. I wish my wife to purchase some tokens of esteem and present them to those friends to whom she knows that I am attached. There are several of whose my dear mother and Jenny that I confide to her.

"Sixth. All the residue of my property, real, personal and mixed, movable and immovable, I give to my beloved wife Mary Ellen Randolph. I advise her to build her a good house on Gatlin, surround herself with comforts, plant trees, establish on the southern slope of the McRobert tract pits for pine apples, and to amuse herself with poultry. I know that she will build a church. I advise her to gather up all the money that she can by the sale of the hotel property, the saw mill, the insurance money, and invest the same by loan on first mortgage in Jacksonville, always taking the advice of a good and honest lawyer on the title and the security, and having his opinion in writing. Of course she will have to take from the sum sufficient means to effect the improvements of which I speak.

"I have one piece of advice, never go in debt, and never go security for any one, no matter whom. I advise her to make a will and give her property as it will do most good.

"The foregoing will is written, dated and signed by me and is a good olographic will by the laws of Louisiana.

"I make my wife, Mary E. Randolph, my executor with seizer of my property. I advise her to consult Daniel, of

Jacksonville, on her legal affairs in Florida, and my dear friends, Livingston and Browne, about my affairs in Louisiana. I advise her to consult Mr. Whitner on any plan of improvement she may contemplate making. His experience is very long.                    W. M. RANDOLPH."

"The above instrument on one sheet of paper written on three pages was now here subscribed by W. M. Randolph, the testator, in the presence of each of us, and was at the same time declared to be his last will and testament, and we, at his request, sign our names hereto as attesting witnesses in the presence of the testator and in the presence of each other, on the next page of this sheet.

"Charles Wemrich, at Lake Conway, and resident of Orange county, State of Florida.

"R. F. Eppes, at Lake Conway, and a resident of Orange county, in the State of Florida.

"Selby Harney, at Lake Conway, and a resident of Orange county, in the State of Florida."

The decree in the Circuit Court, which was appealed from, is as follows: "This cause coming on this day for a final hearing upon the pleadings and proofs, it is the opinion of the court that the legal estate in and to the land given to Fanny Randolph by Wm. M. Randolph, the testator, by the second clause of his will, is vested in Mary E. Randolph, executrix of the said will, and that the said executrix is charged by said will with the duty of improving said lands, and making such disposition thereof, with the advice and direction of James J. Daniel, as will vest the use in the complainant, Fanny Randolph Robinson, during her life. It is therefore ordered, adjudged and decreed that * * the bill be dismissed."

*James D. Beggs* for Appellants.

Mr. Justice Raney delivered the opinion of the court:

The first inquiry in this cause is as to the quantity and character of the estate which Mrs. Robinson is entitled to under the last will and testament of her father, William M. Randolph, in the eighty acres of land described in the second item as Fanlock. The Circuit Judge decided that the legal estate is vested in the executrix, and that such executrix is charged by the will with the duty of improving the land and making such disposition thereof, with the advice and direction of J. J. Daniel, as will vest the use in Mrs. Robinson during her life. This decree is brought here for review. It is contended on behalf of Mrs. Robinson that she has a legal estate in fee unencumbered by any trust.

The word heirs was not considered in England, even prior to the statute of 1 Victoria, ch. 26, (A. D. 1838) necessary to the creation by devise of an estate in fee simple in land, but other apt expressions in the will denoting an intention to create such an estate, were held sufficient. Among others, this effect was given to a devise to one *in fee simple* or to a person and *his assigns forever*. In that country an indefinite devise of land, as simply to A., without other words, in a will executed prior to the operation of the statute referred to, created only a life estate in the devisee. The same rule has been recognized in most of the States of the Union in the absence of a curative statute; yet not in all of them, the Supreme Court of Ohio holding that it did not obtain in that State, and in South Carolina the Equity Court of Appeals taking the same view, (Jenkins vs. Clement, Harper's Reports, 72,) but the law judges following the old rule, (Hall vs. Goodwyn, 2 N. & McC., 383,) and the Legislature subsequently adopting that of the

Equity Judges. Peyton vs. Smith, 4 McC., 476. In Florida we have no statute, nor any decision of this court.

Mr. Jarman in his treatise on wills, (Vol. 3, p. 22, 5 Am. Ed.,) speaking of the rule as generally adopted, says this rule of construction is entirely technical, as according to popular notions the gift of any subject simply, comprehends all the interest therein; and a conviction that the rule is generally subversive of the actual intention of testators, always induced the courts to lend a willing ear whenever a plausible pretext for a departure from it could be suggested. It has been long settled that when a devisee whose estate is undefined is directed to pay the testator's debts or legacies, or a specific sum in gross, he takes an estate in fee on the ground that if he took an estate for life only he might be damnified by the determination of his interest before reimbursement for expenditures. The disparity in the amount charged upon the devisee to the value of the land made no difference. Where the charge however is upon the land so devised, and not upon the devisee personally, the indefinite devise is not enlarged from a life estate to one in fee. Again, a fee simple he states is held to pass by an indefinite devise where it is succeeded by a gift over in the event of the first devisee dying under the age of twenty-one years; such devise over being considered to denote that the first devisee is to have the inheritance in the alternative event of his attaining the age in question, since in any other supposition the making the ulterior devise dependent on the contingency of the devisee dying under the prescribed age is very capricious, if not absurd. If the devisee over confers only an estate for life, or if the contingency is the dying of the prior devisee under any other age than majority, such prior devisee still takes a fee. Ibid, 26–27.

It has moreover long been established that the use of the word *estate* in the words of gift, or dispositive part of the will, as my estate at A or in A, or " my estate of Ashton," though accompanied by words of locality or other expressions referable exclusively to the corpus of the property, will carry the inheritance; yet it has been held that such will not be the case where it is not an operative word, or is used merely in the introductory part of the will by the testator in expressing an intention to dispose of all his worldly estate, or where it is by its reference restrained to an antecedent word of devise. Ibid, 32, *et seq.* The word *property* is held to be the equivalent of the word estate, in giving a fee, and, like it, to pass the interest of the testator in the land. Ibid, 43.

In Roe vs. Shell, 16 East., 251, the will, after making bequests to several of the testator's relatives out of his stock in 4 per cent. consols, and of all his wearing apparel, devised as follows: " and after all my just debts and funeral expenses paid, I leave all the remainder in the above stock *with my freehold property* to my sister Margaret Stoker, and all other monies due me; " and it was held that the sister took a fee in the real estate. Lord Ellenborough said: " There can be no doubt about his stocks, and Lord Mansfield was of the opinion that the word *effects* was synonymous to *property* and would carry a fee." LeBlanc, J., remarked: " property is a word large enough to carry the interest in the estate." See Patterson vs. Huddart, 17 Beavan, 210, also Nichols vs. Butcher, 18 Vesey, 193, where a devise of " all my real and personal property to my wife " passed the estate to the devisee and her heirs. Doe vs. Roberts, 11 A & E, 1000. In Doe vs. Morgan, 6 B. & C., 512, the testator was seised in fee of the premises in question, and after giving some pecuniary legacies his will proceeded as follows: " and all my property and

effects of all claims I shall have, I give to my brother, John Morgan, of Tull Glase in Cray, but my mother is at liberty to give £1000 of my property where she pleases." It was held that the real estate passed to the brother, Lord Tenterden remarking that it had been decided in many cases that in a will the word *property* is of itself sufficient to pass real estate unless there be *something in other parts of it to show clearly that the word was used in a more confined sense,* and it was further held that the use of the same word as to the £1000 was not sufficient to show that it was used previously in a more confined sense. Randall vs. Tuchin, 6 Taunton, 410. In Bailis vs. Gale, 2 Ves. Sen., a devise to "my son Charles all that estate I bought of Mead, after the death of my wife," was held to pass the fee, and likewise the words "all my land and estate in Upper Caterby in Northamptonshire," in Barry vs. Edgeworth, 2 P. Wms., 523.

In our country we find a similar view obtaining. In Lamberts vs. Paine, 3 Cr., 97, a devise of all the estate called Marrowbone lying in Henry County, containing by estimate 2585 acres of land, and also one other tract containing, &c., called P. F., was held to carry the fee in Marrowbone. The word estate is said, in the opinion, to be sufficiently descriptive in testamentary cases of both the subject and the interest existing in it—and though its meaning may be restricted by circumstances or expressions indicative of its being used in a limited or particular sense so as to confine it to the subject alone, yet in its general use it is understood to apply more pertinently to the interest in the subject. See also Godfrey vs. Humphrey, 18 Pick., 539. In Maryland it is held that no technical terms, no particular form of words in a will, are necessary to create an estate in fee, but any words sufficiently showing the intention of the testator to dispose of his whole interest in the thing devised

will suffice; and that when the intention of a testator does not clearly appear from the words used in a clause of his will which is to be construed, resort may be had to the introductory clause to explain their meaning; and that the words "estate," "property," "all I have," "all I am worth," "everything I die possessed of," "all and everything," used in a devise will pass the fee, such intent being manifest from all parts of the will taken together. Chamberlain *et al.* vs. Owings *et al.*, 30 Md., 447; Burke vs. Chamberlain, 22 Md., 310. In Massachusetts when the devise was: "To A. I give and devise all my lands and tenements in W., with the privileges and appurtenances to the same belonging, containing 400 acres, be the same more or less. This estate was formerly the property of G., and I now devise it as a token of respect for the devisee, and in consideration of his services in directing the education of my two grandsons." A fee was held to pass to A., although words of inheritance were annexed to other devises in the same will. Leland vs. Adams, 9 Gray, 171; Lincoln vs. Lincoln, 107 Mass., 590; Crossman vs. Field, 119 Mass., 170. In New Hampshire where the devise was in these words: "I will all my landed property in Northampton to Abner Fogg," it was held that the devisee took a fee. Fogg vs. Clark, 1 N. H., 163. In the opinion in this case it is observed "the word property, in its most strict and proper sense, relates solely to the quantity of the estate in the land, and unless words restraining its signification are added always means the whole interest. The word property in such connection is synonymous with the word estate or interest, and includes everything on the land which the testator possessed." See also Morrison vs. Semple, 6 Benny, 94; Caldwell vs. Ferguson, 2 Yates, 250; Rossiter vs. Simmons, 6 S. & R., 452. In New York, in the case of Jackson vs. Howard, 17 John, 281, the words

of the will were, " my property, after my debts are paid, I leave and bequeath to my beloved wife A., and wish her to educate my two daughters," * * * without any other devise or bequest, except a ring to another person, and it was decided that the wife took the fee in the realty.

Confining our view to the second item of Mr. Randolph's will we do not think the word *property* used therein can be regarded as not operative. It is a part of the devising or dispositive portion of the will. The testator had not previously completed the provision for his daughter. The case is very much like that of Leland vs. Adams *supra*, where it is said: "We view the second sentence in this devise as it stands in the will, not as introduced incidentally, after the devising part was perfected, but as an operative part of the devise. In that sentence the devisor expressly repeats the devise of the ' estate,' which in the first sentence he devised by the words, 'lands and tenements.' Both must be taken together." We think the use of the word property in the fourth sentence of the second item of Mr. Randolph's will, which is to be taken or construed with the first sentence, and other sentences, shows that he was dealing with and had in his mind his property, or estate in the land, and intended to give and secure this property and estate to the daughter. There is nothing in any part of the will showing that this word was used in a more confined sense, or that he meant to give less than his whole interest in the land. In the case last cited the following language from Randall vs. Tuchin, 2 Marsh, 117, is approvingly quoted: " It is admitted very properly that the word ' estate ' or ' estates ' will carry a fee unless the other parts of the will restrain the effect of it. Formerly a narrower construction prevailed, and it was held that if the word ' estate ' were attended by words designating the thing devised or its situation, it was to be considered as not de-

scriptive of the interest intended to be passed, but only of the lands themselves, which were the subject of the devise. Latterly, however, a more liberal construction has been adopted ; and the word estate, though it be followed by words which point at the situation, or at the particular house or land, has been held to convey a fee simple. It may be restrained, it may be shown by other parts of the will, that the testator has used the word as descriptive only of the thing devised, and not of the interest intended to be conveyed ; but then it lies on the party who contends for this narrow construction to show that there are such words of restraint in the will " ; and after quoting from or citing the same cases as reported in 6 Taunton, 410 ; Roe vs. Bacon, 4 M. & S., 366 ; Uthwatt vs. Bryant, 6 Taunton, 317, it is remarked : " these causes are decisive that the word ' estate ' even when used in a will as a word of reference will carry a fee unless other parts of the will show that such was not the testator's intention."

Admitting, even, that the intention to give his whole interest in the land does not upon the basis of the rule invoked appear in the clause or item in question, but that the clause or item leaves the question in doubt, we are permitted, by the rule laid down in Maryland and elsewhere, to look to the introductory clause of the will. We there find the same word used in asking Divine blessing upon the "following disposition of *the property*," with which he has been entrusted. Not part of the property but all of it. In Chamberlain vs. Owings, *supra*, the Supreme Court of Maryland says : " When the intention of the testator does not clearly appear from the words used in the clause of a will which is to be construed, then a resort may be had to the introductory clause, if there be one, to explain their meaning, and if by it is manifested an intention upon the part of the testator to dispose of the whole of his estate,

the words in the clause to be construed, which otherwise would be of doubtful meaning and consequently not sufficient to pass the fee, shall be taken in that sense which accords with the intention expressed in the introductory clause, and will pass the inheritance and give effect to all parts of the will." In that case the clause to be construed gave to E. P. B. one-half of certain personal property, and " likewise, one-half of all and everything that shall fall to me, (the testator,) at my mother's decease," and the introductory clause was : " and as touching such wordly *estate* wherewith it hath pleased God to bless me in this life, I give, devise and dispose of the same in the manner and form following." This introductory clause was held to show an intention to dispose of the testator's whole estate, and the court say : " Having the intention of the testator plainly and clearly manifested in the introductory clause of the will to dispose of his whole estate the words ' all and everything ' are sufficient to pass the fee " in the lands falling to the testator at his mother's decease. In Fogg vs. Clarke, *supra*, the introductory clause of the will was as follows : " As to my real and personal estate I do will the same to be disposed of as follows," and the court say : " But such introductory words it has often been decided are not sufficient to pass a fee when the words of the devise themselves import nothing beyond a mere devise of the land without expressing the nature of the estate which the devisee is to have in it, such introductory expressions are still entitled to some consideration, and when accompanied with other expressions general or particular, corroborating the presumption that the testator intended to give a fee, may cause such words to pass a fee without any words of inheritance, although such devise unconnected with them might not be sufficient for that purpose." * * * "The words

41

of this devise, *all my landed property in Northampton*, distinctly refer to the extent of the testator's interest in the land, and taken in connection with the introductory words of the will disclosing his intention to dispose of his whole estate, afford sufficient evidence that he intended to give a fee." In Virginia it is held that the use of the word " estate " or " property " in the introductory clause of a will is sufficient to enable an indefinite devise to carry a fee.

There is not wanting on the face of the will other good reasons for believing that the testator intended to give a fee to his daughter. It is to be observed that there is not used what might be called a proper word of limitation (as opposed to words which by construction are held sufficient) to create a fee in the devises either to the grandson, the daughter or the widow, who are evidently the principal objects of his care and bounty. There is, however, no room for doubt in view of the rule of construction referred to above, by which a prior devisee is held to have a fee when an indefinite devise to him is to be succeeded by a gift over to another in the event of the former dying under a particular age, and he does not die under such age. Brigg vs. Shaw, 9th Allen, 516. In Cook vs. Holmes, 11 Mass., 528, the testator devised to his "grandson, Gregory C., only child of his son, Daniel C., a certain piece of land in Watertown containing about six acres," without any words in the clause indicating the duration of the estate he intended to bestow. A preceding item of the will gave to a son, Stephen, a moiety of land in Newton and " all the lands, houses, &c., described in his deed of gift to him * * *; the *said Stephen paying* one-half the income to the widow and certain other sums specified in the condition of said mortgage, *and also one-half* the *legacies given in the will* to the testator's grandchildren;" and another item gave to his son Israel the other moiety of the land in N., he paying

one-half the legacies to the grandchildren. After observing that the whole of the will should be looked into, and there should be drawn from such parts of it as have a bearing upon the clause or devise under consideration, what was the probable intent and design of the testator as to the duration of the estate he had determined to bestow upon his grandchild, the court say: " If, in this inquiry, it should appear that in other devises contained in the will the testator manifestly intended estates in fee to the devisee without using apt words for the purpose, it would be natural to suppose that such was his intention in other parts of the will where the same ambiguity might exist Now in the devise to Stephen * * * * it cannot be supposed that he intended only to pass an estate for life ; yet there are no words of inheritance. But the law construes this to be a devise in fee simple because the land being burdened with the payment of one-half of the income to the widow of the testator, and with the payment of the legacies, such must have been the intention of the testator. The same observation will apply to Israel C., to whom the other moiety of the land in Newton is devised, without any word of inheritance, but on condition of his paying one-half the legacies ; and yet he left that intention wholly unexpressed by any words made use of by him in the respective devises." In Chamberlain vs. Owings, *supra*, it was contended that inasmuch as a devise to Stephen was to him and his heirs, it followed that the testator knew what terms were required to pass the fee, and that therefore the omission of such terms in the devise to Eleanor indicated an intention to give her but a life estate. The court did not concur in this, but held that having shown it to have been the manifest intention of the testator to dispose of his whole estate, and that he used words sufficient *in law* to pass the fee in his devise to Eleanor, the omission to use

technical words of inheritance was to be attributed to the want of skill in the draftsman, and not to an intention to give her but a life estate.

Applying the reasoning above to the will before us the conclusion to be drawn from a consideration of the devises to the grandson and widow is potent, as showing an intention of the testator to give the daughter a fee. If it be urged that a want of skill cannot be imputed to the testator in this case, it certainly cannot be said that the testator's knowledge of the effect of the rules of law invoked does not indicate that by his use of words or language invoking such rules they were relied upon by him to effectuate the intention they imply.

Moreover it is a rule that the same word used in different parts of a will is to be taken as having been used in the same sense, unless there is something to show the contrary. Hawley vs. Northampton, 8 Mass., 32. We find the word, property, used in the clause in question, in the devise to the widow, and in the introductory clause, and it is perfectly clear that in the latter two instances that it means not only the subject matter, but the interest of the testator therein, and there is no reason why a different meaning should be given, or a different purpose attributed to the testator in its use, in the first instance.

Looking at the will as a whole, we think it was evidently the intention of the testator to give a fee to his daughter, assuming such was his estate in the land, and the intent of the testator is the great purpose to be effected where no rule of law is violated in doing it. Lines vs. Darden, 5 Fla., 51; 3 Cranch., 134; Jackson vs. Housel, 17 John., 281; Den vs. Payne, 5 Haywood, 103; Morrison vs. Semple, 6 Benny, 94; Tatum vs. McClellan, 50 Miss., 1.

Having concluded that the quantity of interest or estate derived is a fee, the next question arises upon the effect of

the provision that the property shall be so secured to the daughter that neither she nor husband shall ever dispose of it, including that appointing Mr. Daniel trustee to support the devise.

Counsel for appellant contends that the restraint upon alienation is void. He cites 1st Redfield on Wills, 448; 2 Jarman, 528–529; 21 Pick, 427. There is nothing in these citations inconsistent with the views we shall now submit.

It is settled that if a grant or devise to a male person of an absolute estate, legal or equitable in fee for life, be made, and there is annexed to it a condition that the grantee or devisee shall not have power to alien it at all, the condition is void, and the estate, in fee or for life as it may be, will rest absolutely in the grantee or devisee. The power of alienation being necessarily and inseparably incidental to such an estate, it is held that to deny it is an attempt to create a new estate, not known to the law. There are, however, modifications of this rule which allow a restraint upon alienation for a limited stated period, (2 Jarman, 533; 1 Washburne on Real Property, 80,) and provide for the cessation of a life estate with limitation over in fee to another person, upon the tenant aliening his interest. We are not however dealing with a devise to or provision for a man. The provision is for a daughter, and the object and intent of the testator was to provide for her. Either a proximate and probable, or a remote and possible, marriage of this daughter was in his mind. In the light of both English and American authorities we do not think it can be longer doubted that restraints upon both alienation and anticipation or either, to be effectual during coverture, may be annexed to the separate equitable estate of a married woman. It makes no difference that the grant or devise so restrained was made or took effect

while the daughter was single. If before disposing of the estate she marry, the limitation or restraint becomes effectual upon, and it continues so throughout the duration, of such marriage; should she become discovert, and marry again without having in the interim parted with her property, the restraint again becomes effectual for such subsequent marriage. It is true that during the period she is single the restraint is not binding, and in such unmarried state she may act as if it was not expressed or clearly implied in the deed or will under which she takes. At one time this restraining power was denied by the English courts. Newton vs. Reid, 4th Simon, 141; Massey vs. Parker, 2 M. & K., 174. But in the later cases it has become settled, and Newton vs. Reid, and Massey vs. Parker, so far as they question it, are not followed. It was found that the power of disposition given to a married woman over her separate equitable estate was, in view of the well known influence of the husband, destructive of the very security intended for it. The Court of Equity having created such estate, it was held that it could modify its creature by annexing to it the restraining feature. Tullett vs. Armstrong, 1 Beavan, 1 and s. c; 4th Mylne & Craig, 377; Scarborough vs. Boardman, 1 Beavan, 34 and s. c.; 4 M. & C., 377; Clark vs. Jaques, 1 Beavan, 36; Baggett vs. Meux, 1 Collyer, 138, s. c.; 1 Phillips, 627; Goulder vs. Camm, 1st DeG. F. & J., 146; Peillion vs. Brooking, 25 Beavan, 218.

The same doctrine is recognized in States of the Union. Fears vs. Brooks, 12 Geo., 195; Robert vs. West, 15 Ga., 122; Freeman vs. Flood, 16 Ga., 528; Weeks vs. Sego, 9 Ga., 199, Nix vs. Bradley, 6th Richardson Eq. Repts., 43; Beaufort vs. Colyer, 6th Humphries, 486; Perkins vs. Hays, 3d Gray, 405; Nixon vs. Rose, 12 Grattan, 425; 2 Perry on Trusts, sec. 670–671.

In Fears vs. Brooks, Nisbet J., speaking for the court, said: "A separate estate may be made in a *feme sole* as well as in a married woman, which upon marriage will be good against the marital right and this although no particular marriage be in contemplation. Upon marriage the trust will immediately attach upon the property so as to exclude the husband's title, although no further settlement be executed."

It is true that in Pennsylvania no such restraint can be sustained unless there is a marriage in immediate view when the trust is created, and that on the termination of the coverture the trust falls, and is not revived by a second marriage. That a marriage is in view need not, however, even in that State appear by the instrument creating the trust, but the creation of the trust is evidence that the marriage was in contemplation of the donor and when it is followed within a reasonable time by its consummation, it concludes the proof. Wells vs. McCall, 64 Penn. St., 207.

It does not appear from the record of the case before us when the daughter, Mrs. Robinson, married, but it is stated that she was a *feme sole* at the testator's death. It may be that even under the rule in Pennsylvania there is no power of alienation in Mrs. Robinson during the present coverture. We have found no authority outside of Pennsylvania so limiting the rule, and see no reason why if the power can exist so limited, it cannot without such limitation.

As the rule allowing such restraint upon alienation is confined to separate equitable estates the importance of the question, if not the interests involved, requires that we should consider whether the estate devised is of such character. It is a principle that the naming or appointment of a trustee by the donor is not essential to such an

estate, but that equity will supply one whenever the intent of the donor to create a separate estate clearly appears. Harwood vs. Root, 20 Fla., 955 ; Fears vs. Brooks, 12 Ga., 195. There is no trouble here on this point, as a trustee is named by the testator. Does this trustee take the legal title to this property ? Courts imply a legal estate in trustees, although no estate be given them in words, as where they are required to do something that requires a legal estate of some kind in them. Perry on Trusts, sec. 313.

If an agency or duty or power be imposed on the trustee, or if the purpose of the trust is to protect the estate, or if in other words it is a special or active trust, the legal title is in the trustee and the beneficiary has only an equitable estate. Ibid, sec. 305 ; and wherever the words show a clear intent to create an estate for the sole and separate use of one during her married life, the same result will follow. Ibid, sec. 309. We think it clear that this will imposes upon the trustee the duty of protecting the corpus of this estate against alienation during the coverture ; that upon the daughter's marriage this trust, to say nothing more, arose.

The Chancellor, in Nix vs. Bradley, *supra*, said : " There are three modes of disposition by which a separate estate may be created in favor of a marrried woman :

" *First.* When technical words are employed, as instances where the estate is given for the sole and separate use of the wife.

" *Second.* Where the estate is not given after this form, but the marital rights are excluded by express words—for example, where an estate is given to the wife, but not to be subject to the power, control, or liabilities of the husband ; or, where the marital rights are restricted by words of a similar import.

" *Third.* When the marital rights are excluded by im-

plication as in instances where by the instrument creating the estate the wife has power to do acts, to exercise control, and to make dispositions of the property which are inconsistent with the marital rights. It is thought that the most, if not all the cases of this description may be brought within one or the other of these classifications."

In Fears vs. Brooks, *supra*, the questions were: 1st. Did the will create a separate estate in the daughter? 2d. If so, does it restrain her right of alienation. Both questions were answered in the affirmative. It was held to be a separate estate because the marital rights were defeated, and further that this was the purpose of the testator, and that such purpose being legal it must be carried out, and that the marital right must yield. In Mixon vs. Roe, 12 Gratt., 425, the devise was to trustees for the use and benefit of a daughter and her heirs, with the following provision: " *And as it is my wish and desire to guard in the most ample manner against the imprudent sale or other disposition of the aforesaid property during the natural life of said Emily Coupland,* (the daughter,) *it is hereby wholly and solely confided to the discretion of the aforesaid trustees in what manner* the said Emily *shall receive and enjoy the profits arising from the hire or other disposition of the slaves aforesaid,* and in the event of the death of said Emily, without any heir or heirs of her body, then and in that case I desire that all the slaves and their increase shall be given up to my son, Gustavus, or his heirs, forever." "Here," says the court, referring to the words we have italicised, " an intention is plainly indicated that neither the wife nor the husband shall have the right to sell or otherwise dispose of the property; which is inconsistent with the idea of its being given subject to his marital rights; in which case the *jus disponendi* would have been a necessary incident." Again, quoting 1st Benan, 17, it is said: " The separate estate may, and

often does exist without the restriction, but the restriction has no independent existence; when found it is a modification of the separate estate and inseparable from it."

Under the Constitution and Laws of Florida, where property is devised to a single woman directly so as to give her the legal and equitable title, and she afterwards marries, it, during such married state, is her separate statutory property, and her title to the same continues separate, independent and beyond the control of her husband, and cannot be be taken in execution for his debts, but it will remain in his care and management, and she is not entitled to sue her husband for the rent, hire, issues, proceeds or profits thereof, nor shall he charge for the management and care of the property, but he and she may by joint conveyance sell and convey the same in the manner prescribed by the statute.

Can anything be clearer than the intention of testator to restrain the power of his daughter during her coverture to alienate or sell the land either by her separate act or the joint act of herself and her husband, is shown to be here? No more express or effectual language could have been used.

The sentence of the will, in which the testator says : " I make my wife, Mary E. Randolph, my executrix, with seizer" (*seisin*, we interpret it,) " of all my property " has so far as the seisin provision is concerned, and was, we think, intended to have no other effect than to give his executrix, as such, whatever possession, and right or title, were necessary to the performance of her duties as executrix, but not as inconsistent with, nor to defeat any express and special devise and bequest. It is general, and if it keeps the possession of the land in question in the executrix, then it would also keep in her, as executrix, the possession of the gun, and the fishing rod and reel.

We are satisfied it has no such effect, as to this land, and that it gives no more right or power to the executrix than she would have without such a provision being in the will.

In regard to the parol testimony which has been introduced to show the estate devised, it is only necessary to say that while a court may look beyond the face of the will, when there is an ambiguity as to the person or property to which it is applicable, we do not think that under this will, if ever, any parol proof can be used to enlarge or diminish, or alter the estate actually devised by the will. King vs. Ackerman, 2 Black, 417.

The bill seeks, so far as its real purpose is concerned, to have the devise to the daughter declared to be a legal estate in fee simple, absolute, and that the restraining provision is void, and that she can make sale of the land. Neither of these positions is tenable. The bill makes no controversy with the executrix or others, as to improvements; nor any with the trustee, (except as to the legal title,) so far as his rights, duties or powers are concerned, except so far as they are involved in the question of alienation, and there is no proper basis for any decision upon these points not involved ; so, particularly, in view of the limited range of the argument, we decide nothing as to them, nor more than what is said as to the legal title being in the trustee, and that the estate given is the entire interest of the testator in the land, and that the estate of the daughter during coverture is a separate equitable estate subject to the restraint upon the right to dispose of the land..

The prayer of the bill cannot therefore be granted, and the decree must be reversed and the bill dismissed, without prejudice as to any other question.