Mr. Justice GRIER.
 

 It has been an established rule, in the construction of wills, that a devise of lands, without words • of limitation, .confers on the devisee an estate for life only. This rule' was founded rather on policy than on reason; for while it favored the heir-at-law, it generally defeated the intention of the testator. This is acknowledged by Lord Mansfield in
 
 Loveacre
 
 vs.
 
 Blight,
 
 (Cowper); and the interference of modern legislation, to abolish the rule and establish a contrary one, is evidence of the correctness of his remark. This change has been effected by statute in England and most if not all of tht States of this Union.
 

 The will now presented for our consideration was made before this obnoxious rule was repealed in New York, and we are compelled to examine its provisions fettered by this technical, artificial, and' now nearly obsolete rule of construction. Courts have' always been asrute in searching for some equivalent
 
 *415
 
 popular phrase, or some provision of the Will incompatible- With' Buch imputed intention, to rescue it from the effect of this rülé. Thus, when a testator devises land without legal words’ of limitation, but adds that the devisee " may sell or do therewith as he pléaSes,” he is presumed to have intended to give a' feé; becaiUse such a power would be incompatible with a less estate. It is a'long settled rule also, that where a devisee, Whose estate is1 undefined, is directed to pay the testator’s debts or legacies; or' a specific sum in gross, he takes an estate in fee. The reason- on which this rule is founded is, that if , the devisee took- a less estate he might be damnified by the determination of his interest before reimbursement of his expenditure. This r'úle, thdügh founded on inference or implication, is nevertheless as technical and rigid in its application as that to which it is- an exception: for the Court will not inquire into the relative-valué of the' land and the charge; or, if the charge be contingent, will not weigh probabilities as to whether the devisee will ever be called on- to pay it. The intention of the testator as to the limitations of an estate devised can be judged and decided only from his- oWn language a's contained within the “four corners” of his‘ will. Parol evidence cannot be received to show that such inferérice Was not’founded on probability, or that this.rule of construction ought not, to apply under certain circumstances. This Would in effect be delivering the power and duty of construing' the Will to a jury.
 

 The will of Lawrence Benson is very brief and is’ as- follows:
 

 “
 
 In the'first place,
 
 I give and bequeath unto my son, Benjamin L. Béñsón; all that estate now occupied by George Williams, to do and disposé of as he may think proper.
 

 I also give and bequeath unto my son, Benjamin L. Benson the Homestead where I now live, situated on Harlem River:
 

 Secondly.
 
 My will and intention is, that my soñ, Benjamin L. Benson, do give unto my ^grandchildren, after the d'ecéásé of my wife; the' sum of $1,500.
 

 ThirdXy.
 
 The income; of these legacies, and als'o of my estate, ■ real and personal, I give unto my loving wife, Mkriá Béítsbn,
 
 *416
 
 during her widowhood, to do and dispose of as'she may think proper.”
 

 It is plain that this instrument has been written by a person
 
 '‘inops
 
 concilii,” and wholly ignorant of proper legal phraseology.
 

 He uses the term
 
 “
 
 bequeath” instead of
 
 “ devise"
 
 in the gift of his real estate.
 

 By the first clause he gives his two pieces, of real estate to his son Benjamin, who appears to be the chief object of his bounty.
 

 • By the second, he charges the sum of $1,500 on Benjamin to be paid to the grandchildren of testator.
 

 By the third, hé gives to his wife a life estate on all of his estate, real and personal, to be forfeited if she marry again.
 

 Now, we must observe,
 

 1st. That the son has clearly but an estate in remainder in the lands devised to him.
 

 2d. That it is a vested remainder.
 

 3d. That this testator not only postpones the possession and enjoyment of the land devised to his son for an indefinite time, but charges him with the payment of a gross sum of money, which he will be personally liable to pay, for land which he may never personally possess or enjoy.
 

 If the charge is sufficient in law to give the devisee an estate in fee by implication or presumption, how muoh stronger is this presumption when his enjoyment of it is indefinitely postponed.
 

 But it is contended, that, because the testator has used the • phrase
 
 “ to do and dispose of as he may think proper,"
 
 as regards the Williams’ farm, and in the devise of the Homestead has omitted it, such omission as to the latter is equivalent to an express limitation of it to the life of the devisee; and that the Court ought to presume that the sum to be paid was intended as a consideration for the first only; and if they will not presume it for want of evidence of its sufficiency, that parol evidence ought to be admitted to show the value of the Williams’ property to have been more than sufficient to pay the sum plainly charged on both.
 

 Now there is no established rule of construction that if a
 
 *417
 
 testator having devised two messuages to his son and charged the devisee with the payment of legacies that if he add this informal power as to one, it is equivalent to an expressed limitation as to the other. Nor is it a necessary inference or logical conclusion, arising from the omission to use certain informal words, which have been construed to show an intention to give a fee as to one, that the testator did not intend to give a fee in the other of the messuages charged. Besides, it is clear that Benjamin could not repudiate his obligation to pay the legacies by refusing to accept the gift of the Williams’ farm, while he retained that of the Homestead. To conclude, therefore, from this fact that the testator did not intend to give a fee in both, would be mere conjecture, and that, with no sufficient reason'to support it.
 

 The face of this will shows that the testator did not suppose these informal words, giving a power to sell as to one, were necessary to enlarge the estaté to a fee, much less that their omission would limit the devise of the other to a life estate, for he adds the same power to the life estate given to his -wife.
 

 If we werb to indulge in conjecture, why this phrase was coupled with one of the estates devised and not with the other, it would be, that the testator intended to confine the charge of the legacies to the "Homestead ” and not the Williams’ farm, or that he wished, the one to remain in the family and name, while the son should be at full liberty to dispose of the other as he might think proper.
 

 The rule of law which gives a fee, where the devisee is charged with a sum of money, is a technical dominant rule, and intended to defeat the effect of the former rule which itself so often defeated the intention of the testator.
 

 Courts have' always been
 
 astute,
 
 as we have said, to find reasons for rescuing a will from the artificial rule established in favor of the heir-at-law, and will not even be
 
 acute
 
 in searching for reasons to restore its force, where the statute has not abolished it We are not compelled to make this inference or implication through submission to any established rule of construction; on the contrary, we are required to make an exception tc. one: on
 
 *418
 
 mere conjecture, and to introduce parol testimony as to value to justify a departure from it. A Court may look beyond tbe face uf the -will where there is an ambiguity as to the person or property to which it is applicable, but no case can be found whore such testimony has been introduced to enlarge or dininish the estate devised.
 

 We are of opinion, therefore, that Benjamin L. Benson took an estate in fee in both the messuages described in the will.
 

 The judgment of the Circuit Court is therefore affirmed with oosts.