MYAR v. SNOW.

WILL: *Construction of: Limitation of real estate.*

A testator devised his entire estate to his wife for life, and after her death disposed of a portion of it as follows: " It is my will that my daughter, Pauline L. White, shall have the other two-fifths of my entire estate, except slaves, and the other half of all my slaves, to be held by her and her heirs to her sole and separate use, clear from and not subject to the debts or contracts of any husband or husbands that she may hereafter marry; at her death all the same to go to her bodily heirs, should she leave any, but, if she should leave none, then the same to go to her sister Louisa, and her bodily heirs, to be held by her in the same manner as the property herein given her." Pauline, the devisee under this clause, married, and she and her husband executed a mortgage, with power of sale upon lands taken under the will. After her death the power of sale was executed and the mortgagee became the purchaser of the lands. In an action brought against the mortgagee by Pauline's children, to recover possession, *Held:* That only a life estate in the lands was vested in Pauline, with remainder in fee in her children, and that the mortgage could confer no right of possession against them after her death.

APPEAL from *Ouachita* Circuit Court in Chancery.

B. F. ASKEW, Judge.

*H. G. Bunn* for appellant.

1. The language of the will does not create an estate tail, which under section 643 Mansfield's Digest, gives the tenant in tail a life estate merely. It gives Pauline an estate in fee. The limiting words are in another sentence, and following that of the devise. The limitation over is void, and the grantee had the absolute power of disposal. *100 N. Y., 287; 68 Me., 34 (28 Am. Rep., 1); 77 id., 423 (52 Am. Rep., 781); 15 S. C., 440; (40 Am. Rep., 703); 2 Mass., 56 (3 Am. Dec., 24); 28 Am. Law Reg., 531; 59 U. S., 202.*

2. If the devise over is not a conditional remainder, as we contend it is, it is an executory devise, and the devise over is too remote. *3 Ark., 147; 23 id., 179; id., 356; 6 Johns, 54 (5 Am. Dec., 188); 2 Rich. Eq., 142 (46 Am. Dec., 41); 7 Rich, Eq., 105 (62 Am. Dec., 396); 3 Gray, 142 (63 Am. Dec., 725).*

*B. W. Johnson,* for appellees.

Under section 2534 Mansfield's Digest, "In all cases not provided by this act the inheritance shall descend according to the course of the common law." This would have been a good devise over to the children of Mrs. Snow at common law. *26 Mich., 18; 12 Wend., 83; 2 P. Wms., 471.*

It was clearly the intention of the testator to give Pauline a life estate, remainder in fee to her "bodily heirs" or children, and he had the right to do so. *62 Ill., 83; 11 Wend., 379, 311, 361; 68 Ill., 594.* The words "bodily heirs," "issue," and "children" are construed to mean the same, since the abolition of the rule in Shelley's case. *1 Grant's Cases, 60; 4 Pick, 198; 5 Penn. St., 461.*

See, also, *38 Ark., 347.*

COCKRILL, C. J. This is an action of ejectment, and the question is what estate did Pauline White, the mother of the

appellees, take by the will of her father, William L. Bradley, made in 1858. He devised his entire estate to his wife for life and after her death provided it should go as follows :

"My step-son, Ira Nunn, to have one-fifth of the entire estate (except of the slaves), real, personal and mixed, to him and his heirs forever; but if he should die without direct descendants, then the whole of his share to go to my two daughters and their direct descendants; that is, children or grandchildren, to be held in the same manner as to sole and separate use as the shares of my property that I herein give and bequeath to them respectively."

"Item 4th. It is my will that my daughter, Louisa H. Powder, shall have two-fifths of my entire estate, real, personal and mixed, other than slaves, and she shall have one-half of my slaves, to have and to hold all that I give and bequeath to her, to her sole and separate use, not subject to the debts or contracts of her present husband or of any future husband she may hereafter marry, and at her death all the same to go to her bodily heirs, should she leave any, and if she should leave none, then the whole of her share to go to her sister Pauline, to be held by her and her bodily heirs in the same manner as the property I herein give to her."

"Item 4th. (2.) It is my will that my daughter, Pauline L. White, shall have the other two-fifths of my entire estate, except slaves, and the other half of all my slaves to be held by her and her heirs to her sole and separate use, clear from and not subject to the debts or contracts of any husband or husbands that she may hereafter marry. At her death all the same to go to her bodily heirs, should she leave any, but if she should leave none, then the same to go to her sister Louisa and her bodily heirs, to be held by her in the same manner as the property herein given her."

The case arises under the last quoted item of the will. Pauline White intermarried with David Snow, and in March,

1881, she and her husband executed a mortgage with power of sale upon a part of the lands she took under the will. She died in October of the same year, leaving the appellees, her children; and in 1886, the power of sale was executed, and the appellant, who was the mortgagee, became the purchaser and received a deed to the mortgaged premises. The action was brought by Pauline's children against him for the possession.

WILL:
Construction of: Limitation of real estate.

The general rule is that in a devise of lands to one without words of limitation, the devisee takes an estate for life only, but the intention of the testator to give a fee or a less estate, may be gathered from any part of the will. *King v. Ackerman, 2 Black, 408.* Thus the language, "it is my will that my daughter Pauline shall have the other two-fifths of my estate," if standing alone, would have created, at common law at least, an estate for her life only, and the subsequent words, "to be held by her and her heirs," if read without reference to what follows, would be sufficient to vest in her a fee simple in remainder after her mother's life estate. But in construing the words of a devise the whole should be taken together. We are not to give an absolute technical meaning to one part of the language and then reject all other parts as inconsistent with it. As the former may be enlarged, so it may be restrained and qualified by what follows. *Scisson v. Seabury, 1 Sum., 242.*

Now, after the words last quoted, which if left without qualification, would have enlarged the life estate into a fee simple absolute, the testator has added, "At her death (Pauline's) all the same to go to her bodily heirs, should she leave any, but if she should leave none," then over. This clause in effect defines what it is meant by the preceding use of the word "heirs" and is a restraint upon its general application. *1 Wash. R. P. *73, sec. 26; Hope v. Taylor, 1 Burr, 268.* The term "heirs of the body" has an appropriate technical meaning as words of limitation to designate heirs in succession, and

it is always to be construed in that sense unless the context shows it was intended as a description of particular persons. *Scisson v. Seabury, sup.; Moody v. Walker, 3 Ark., 147.* In this connection it is said in *Moody v. Walker* that "when certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will uses such terms or similar expressions they should be construed according to their legal effect, for if this was not the case, titles to estates would be daily unsettled to the ruin of thousands." The learned counsel for the appellant concedes what seems to be inevitable under the rule announced in *Moody v. Walker*, and the cases following it (see *Denson v. Thompson, 19 Ark., 66; Watkins v. Quarles, 23 id., 179; Slaughter v. Slaughter, id., 356*), that an indefinite failure of issue was intended by the testator in this case.

Testing the language by these principles we have a devise to Pauline in fee with remainder over upon an indefinite failure of issue. But this under the British statute inevitably created an estate tail (*4 Kent Com., \*274, 276; 2 Wash., R. P., \*264; Moody v. Walker, sup.; Doe v. Harvey, 4 B. & C., 610, S. C.; 10 E. C. L., 724; Bells v. Gillespie, 5 Rand., 273; Irwin v. Dunwoody, 17 Serg. & R., 61; Caskey v. Brewer, id., 441*), which under the statute of this State vests a life estate in the tenant in tail with remainder in fee simple in those who would otherwise take the estate upon the death of the tenant. *Mansf. Dig., secs. 643, 2522; Horsley v. Hilburn, 44 Ark., 458.* The appellants' grantor or mortgagor was therefore only a tenant for life and her conveyance could not confer upon him the right of possession against the remaindermen. See, also, *Chiles v. Bartleson, 21 Mo., 344; Butler v. Heustis, 68 Ill., 594.*

The rule would be different, as has been frequently announced by this court, if the title to the personal property mentioned were in question, for language which would create an estate tail in lands confers the absolute property in chattels.

9

*Moody v. Walker*, and Arkansas cases *supra*. The statute *De Donis*, which is the origin of estates tail, and which was enacted in aid of perpetuities, applied only to lands and tenements. *1 Wash., R. P.*, \*74, sec. 29.

But if a definite failure of issue was intended by the devise, that is that the event which should determine the estate was to happen in the lifetime of one or more of the devisees, it would not aid in the appellant's case. For though the language would not in that event have created an estate tail, yet it would not vest the fee with absolute power of disposal in the first takers. Its legal import would, in that case, be to vest in them an estate in fee determinable upon the contingency of either dying without issue living at the time of his or her death. *Richardson v. Noyes, 2 Mass., 56; Van Horn v. Campbell, 100 N. Y., 287; Britton v. Thornton, 112 U. S., 526; Smith v. Brisson, 90 N. C., 284; Stones v. Maney, 3 Tenn. Chy., 731; Abbott v. Essex, 18 How., 202; Clark v. Stanfield, 38 Ark., 347.* Had either of the devisees died without descendants, the others, if a definite failure of issue was meant, would have taken by way of executory devise. *Moody v. Walker, sup., p. 192,* and cases cited *supra*. The intention to benefit the descendants, or the surviving devisees if there should be no descendants, would be incompatible with the idea of vesting in the first taker the power of disposal, as it would render that intention ineffectual. "The cases which hold that an unlimited power of disposition given to the first taker renders an executory limitation nugatory, have no application to such a case. For in that view, a fee could never be limited by executory devise upon a fee, which always carries the power of disposition; whereas, this is one of the characteristics of an executory devise." *Stones v. Maney, sup.; Moody v. Walker, sup., 192.* But Mrs. Snow died leaving heirs of her body, and not until then did the fee become absolute. In any view, the title of the appellant failed with her death and the judgment is right and should be affirmed.

It is so ordered.