# McCAFFREY *v.* MANOGUE.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 131. Argued January 17, 18, 1905.—Decided February 20, 1905.

The policy of the law in favor of the heir yields to the intention of the testator if clearly expressed or manifested. The rule of law that a devise of lands without words of limitation or description gives a life estate only, does not apply, and devises will be held to be of the fee, where it is plain that the testator's intention was to dispose of his whole estate equally between his heirs, and there is no residuary clause indicating that he intended passing less than all of his estate, and all of his heirs at law are devisees under the will.

.THE question involved in this case is the construction of the will of Hugh McCaffrey, deceased. It was duly admitted to probate and recorded in the Supreme Court of the District. It is as follows:.

"WASHINGTON, DISTRICT OF COLUMBIA,
"*April Thirtieth*, 1896.

" In the name of God, being now in good health and sound in mind and body I hereby certify and declare this to be my last will and testament, hereby annulling and revoking any and all wills previously made.

"I give and bequeath to my daughter, Mary A. Quigley, house number 301 at southwest corner of 11th and C streets southeast, being in lot number 5, in square 970, with the store and dwelling, stock and fixtures, and lot on which it stands, also houses numbers 13 and 15 6th street southeast with lots on which they stand, being parts of lots 19 and 20 in square 841, also any money in bank to my account at the time of my death, also any money due to me, also any building association stock. She is to pay funeral expencies and any other legal debts I may owe, also to care for my lot in Mount Olivet cemetrey.

"I give and bequeath to my son, James B. McCaffrey, house number six hundred and two (602) East Capitol street and lot on, which it stands, being in lot number ten (10) in square number eight hundred and sixty-eight (868).

"To my son, William H. McCaffrey, I give and bequeath house 604 East Capitol street, being in lot number ten (10) in square number. eight hundred and sixty-eight (868) and lot on which it stands.

"To my daughter, Lizzie Manogue, I give and bequeath house number fourteen hundred and twenty-three (1423) Corcoran street, N. W., and lot on which it stands, being lot number fifty-four (54) in square number two hundred and eight (208).

"2. To my son, Francis T. McCaffrey, I give and bequeath house five hundred and nineteen (519) East Capitol street, and

lot on which it stands, being part of lot number (20) in square eight hundred and forty-one (841), also my horse and buggy.

"And to my grandson, Frank Foley, I give and bequeath house number one hundred and twenty-one (121) Eleventh street, S. E., being in lot number fourteen (14), square number nine hundred and sixty-eight (968), and lot on which it stands.

"To my grandson Joseph Quigley, I give and bequeath my watch and chain.

"I hereby name and appoint as executors of this my last will and testament, John E. Herrell and Patrick Maloney.

"All the real estate herein described is located in the city of Washington, District of Columbia.

"HUGH McCAFFREY.    [SEAL.]"

The devisees in the will were the only heirs of the testator.

On the tenth of July, 1897, Mary A. Quigley, died leaving surviving four children, the appellants Catherine L., Margaret, Mary and Joseph Quigley. Edward Quigley, her husband, also an appellant, survived her. She left a will, which was duly admitted to record, by which she devised all her estate to Catherine L. and Edward Quigley in trust for her children. Francis T. McCaffrey, son of Hugh, and one of the devisees in the latter's will, died October 20, 1898, leaving as heirs at law his brothers and sisters, the children of his deceased sister, Mary A. Quigley, and his nephew, Frank Foley. He left a will, by which he devised and bequeathed all of the property to his sister, Lizzie C. Manogue, and his brothers, William A. and James B. McCaffrey, "absolutely and in fee simple, according to the nature of the property, as tenants in common, but not as joint tenants." At the time of his death he was seized and possessed of the real estate devised to him by his father.

James B. McCaffrey has sold and conveyed the lot devised to him to the respondent George W. Manogue. Upon an attempt to sell the property devised by Francis T. McCaffrey a doubt was raised as to the extent of the interest devised to him

and the other devisees by the will of H. McCaffrey, whether an estate for life or in fee simple. This suit was brought " to have it determined what estate each of the said devisees took thereby, and to have their title quieted as against any person or persons who may claim adversely to the same as heirs of said Hugh McCaffrey, or under such heirs."

It was decreed by the trial court that only life estates were devised by the will, and the decree was affirmed by the Court of Appeals. 22 App. D. C. 385.

*Mr. Arthur A. Birney*, with whom *Mr. O. B. Hallam* and *Mr. Henry F. Woodard* were on the brief, for appellants:

In *McCaffrey* v. *Little*, 20 App. D. C. 116, the main question herein was before the court but not decided. Mrs. Quigley took a fee simple. *Collier's Case*, 6 Coke, 16; *King* v. *Ackerman*, 2 Black, 408; *Doe* v. *Holmes*, 8 Dunf. & East, 1; Sharswood's Blackstone, citing *Goodlittle* v. *Maddern*, 7 East. 500; *Doe* v. *Clarke*, 8 New Rep. 349; *Roe* v. *Dan*, 3 Man. & Sel. 522; *Baddeley* v. *Leapingwell*, Wilm. Notes, 235. The Court of Appeals held that because the proofs taken by appellees showed that out of the personal estate bequeathed to Mrs. Quigley "a large surplus must necessarily remain to her after the discharge of all possible demands and expenses," the charge should be construed as upon the personal estate and not the person. But the court had no right to look beyond the face of the will in determining its construction, and should have rejected the testimony as wholly incompetent to diminish the estate which the *fact of the personal charge* defined as created in Mrs. Quigley by the terms of the devise. The court cited no authority for its reception of this evidence and ignored authoritative decisions in doing so. *King* v. *Ackerman*, 2 Black, 408; *Barber* v. *Pittsburg &c. Railway*, 166 U. S. 109; *Allen* v. *Allen*, 18 How. 385; *West* v. *Fitz*, 109 Illinois, 438; Powell on Devises, Jarman, § 379; 2 Jarman on Wills.

If the limited construction of the several devises to life estates only is declared, it must result that the testator,

Hugh McCaffrey, died intestate as to the remainder after the expiration of the life estates, for there is no residuary devise, or other language to dispose of the remainders. It is unreasonable to suppose that this was the testator's intention. *Kennedy* v. *Alexander,* 21 App. D. C. 424; *Hardenburgh* v. *Ray,* 151 U. S. 112; *Abbott* v. *Essex Co.,* 18 How. 202. The other devisees took fee simples also.

Where from the fact of such condition in one of several devises, it is manifest the testator intended to pass a fee in such devise, the fact that in the others he has used similar terms (although without attaching conditions), will, in the absence of words of contrary import, establish a like intent in those other devises, and the beneficiaries will take in fee. Cases cited *supra* and *Cook* v. *Holmes,* 11 Massachusetts, 529; *Butler* v. *Butler,* 2 Mackey, 96, 104; *White* v. *Creushaw,* 5 Mackey, 113.

*Mr. Edwin Forrest* and *Mr. A. A. Hoehling, Jr.,* for appellees:

A devise without words of limitation or inheritance passes only a life estate. The authorities sustaining it are uniform in every jurisdiction, and the same rule of decision obtains in the District of Columbia, with the exception only of cases coming within the provisions of the Code, of which, however, the case at bar is not one. 2 Jarman on Wills, 267; 2 Redfield on Wills, 321; *Farrar* v. *Ayres,* 5 Pick. 404; *McAleer* v. *Schneider,* 2 App. D. C. 461; *McCaffrey* v. *Little,* 20 App. D. C. 116; *Wright* v. *Denn,* 10 Wheat. 204, 236. And this is so notwithstanding the testator in the will may have declared an intention to dispose of his whole estate, although here there is absolutely no expression by testator of any intention to dispose by will of his entire estate in the property, nor does he attempt to dispose by will of his entire property.

The Quigley devise cannot be enlarged by legal implication to a fee. The directions to her were not a charge upon her devise. *Buggens* v. *Yeates,* 8 Vin. Abr. 72; 1 Jarman on Wills, 387; *Wright* v. *Denn,* 10 Wheat. 204, 236; *Jackson* v. *Harris,*

8 Johnson, 142; *Burlingham* v. *Belding*, 21 Wend. 463; *Turn-bake* v. *Parker*, 2 MacA. 444; *Moor* v. *Mellor*, 5 Durnf. & East. 284; *S. C.*, 1 Bos. & Pul. 558; *S. C.*, 2 Bos. & Pul. 247, 253.

Even if the Quigley devise is so enlarged the other devises in the will are not aided thereby.

MR. JUSTICE MCKENNA, after stating the case, delivered the opinion of the court.

It will be observed that the devises are expressed in exactly the same way. To Mary A. Quigley, however, there are given several pieces of real estate, the money of the testator in bank and his building association stock. She is charged with the payment of the testator's funeral expenses and debts; also with the care of his cemetery lot. Nevertheless, neither of the lower courts distinguished between the devisees—to all was applied the rule of law that a devise of land without words of limitation or description gives a life estate only. The Court of Appeals held that the charge or burden upon Mary A. Quigley to pay the funeral expenses and debts of the testator was offset by the gift to her of personal property. It is insisted that the ruling is contrary to the decision in *King* v. *Ackerman*, 2 Black, 408. It is there said: "The rule of law which gives a fee, where the devisee is charged with a sum of money, is a technical dominant rule, and intended to defeat the effect" of the artificial rule established in favor of the heir at law, that an indefinite devise of land passes nothing but a life estate. It was, however, apparent to the Court of Appeals that, to follow *King* v. *Ackerman*, would not execute the intention of the testator by opposing one technical rule by another, but would discriminate between his heirs and destroy the equality between them which it was the purpose of the will to create. To effect this equality the court selected, not the "dominant rule," whose virtue this court pointed out, but the other, regarding it the most commanding. It is altogether a strange tangle of technicalities. Apply either of them, or both

of them, and we defeat the intention of the testator. Are we reduced to this dilemma? We think not; nor need we dispute the full strength of the rule in favor of the heir at law. It is not an unyielding declaration of law. It cannot be applied when the intention of the testator is made plain. It cannot be applied when the purpose of the testator, as seen in the will, cannot be carried out by a devise of a less estate than the fee. *Bell County* v. *Alexander*, 22 Texas, 350. The policy of the law in favor of the heir yields, we repeat, to the intention of a testator if clearly expressed or manifested. That policy, the reason for it and the elements of it, is expressed strongly by Mr. Justice Story in *Wright* v. *Denn ex dem. Page*, 10 Wheat. 204, 227, 228:

"Where there are no words of limitation to a devise, the general rule of law is, that the devisee takes an estate for life only, unless, from the language there used, or from other parts of the will, there is a plain intention to give a larger estate, we say, a plain intention, because, if it be doubtful or conjectural, upon the terms of the will, or if full legal effect can be given to the language, without such an estate, the general rule prevails. It is not sufficient, that the court may entertain a private belief that the testator intended a fee; it must see that he has expressed that intention, with reasonable certainty, on the face of his will. For the law will not suffer the heir to be disinherited upon conjecture. He is favored by its policy; and though the testator may disinherit him, yet the law will execute that intention only when it is put *in a clear and unambiguous shape.*" (Italics ours.)

We think the intention of McCaffrey is "put in a clear and unambiguous shape." He intended to dispose of his whole estate. It is true there is no introductory clause expressing such intention, but there is no residuary clause indicating that he intended to pass less than all of his estate. And all of his heirs at law were his devisees. In other words, the very heirs for whom the rule is invoked are those among whom he distributed his property, and surely he intended a

complete distribution—to vest in each the largest interest he could give, not assigning life estates with residuary fees to the very persons to whom such life estates were devised. In other words, making each heir the successor of the other and of himself. It was evident to the Court of Appeals—it is evident to us—that he intended to make his heirs equal. Of this purpose the charge upon his daughter, Mary A. Quigley, is dominantly significant, not only in effect, but in its expression. She is given a greater quantity of real estate than the other devisees. She is given personal property besides, but, declared the testator, "she is to pay funeral expenses and other legal debts I may owe, also to care for my lot in Mount Olivet Cemetery." That charge was not intended to enlarge the quantity of interest in the real estate devised in the sense contended for, but to make an equality between her and the other heirs and devisees, and, we repeat, that was his especial purpose. In other words, he gave her more property, not a larger interest in it. The devise to his grandson, Frank Foley, shows how carefully the testator regarded his heirs. Surely, as he regarded that grandchild as inheriting the rights which his mother might have inherited, he did not intend a disposition of his property which precluded his other grandchildren of inheriting through their parents. And this will be the result if the appellees are right. No devisee possesses an estate which can be devised to or inherited by his or her children.

Against the effect of the heirs at law of the testator being also his devisees, it may be said that it has been held that, though a testator has given a nominal legacy to his heir or declared an intention to wholly disinherit him, the inflexibility of the rule in favor of the heir has been enforced. *Frogmorton* v. *Wright*, 2 W. Bl. 889; *Roe d. Callow* v. *Bolton*, 2 W. Bl. 1045; *Right* v. *Sidebotham*, 2 Douglas, 730; *Roe d. Peter* v. *Daw*, 3 M. & Sel. 518.

In *Right* v. *Sidebotham*, Lord Mansfield felt himself constrained to enforce the rule, but he observed in protest: "I

verily believe, that, in almost every case where by law a general devise of land is reduced to an estate for life, the intent of the testator is thwarted; for ordinary people do not distinguish between real and personal property. The rule of law, however, is established and certain, that express words of limitation, or words tantamount, are necessary to pass an estate of inheritance." And he hence concluded that words tending to disinherit the heir at law, unless the estate is given to some one else, were not sufficient to prevent the heir from taking.

Lord Ellenborough in *Roe* v. *Daw* followed the rule, and declared also that he thereby probably defeated the intention of the testator. It is a strange conclusion from the facts and needs the sanction of those great names to rescue it from even stronger characterization. Lord Mansfield spoke in 1781, Lord Ellenborough in 1815. We cannot believe, if called upon to interpret a will made in 1896, when the rights of heirs are not so insistent and the rule in their favor lingers, where it lingers at all, almost an anachronism; when ownership of real property is usually in fee, and when men's thoughts and speech and dealings are with the fee, they would hold that the purpose of a testator to disinherit his heirs could be translated into a remainder in fee after a devise of a life estate to another.

But, perhaps, even the severe technicality of those cases need not be questioned. In the construction of wills we are not required to adhere rigidly to precedents. We said in *Abbott et ux.* v. *Essex Co.*, 18 How. 202, 213:

"If wills were always drawn by counsel learned in the law, it would be highly proper that courts should rigidly adhere to precedents, because every such instrument might justly be presumed to have been drawn with reference to them. But in a country where, from necessity or choice, every man acts as his own scrivener, his will is subject to be perverted by the application of rules of construction of which he was wholly ignorant."

To like effect is *Cook et al.* v. *Holmes et ux.*, 11 Massachusetts, 528, where the will passed on contained the following devise:

"*Item.* To his grandson Gregory C., only child of his son Daniel C., deceased, a certain piece of land in Watertown, containing about six acres." The will contained devises to other sons of pieces of real estate, charging them with payment of certain legacies. The will concluded as follows: "The above-described legacies, together with what I have heretofore done for my children and grandchildren, make them nearly equal, and are their full portions of my estate."

The will, therefore, is similar to the will in the case at bar. Equality between the devisees is as much the purpose of one as the other, though it is expressed in one and deduced as an implication in the other. Chief Justice Parker, in delivering the opinion of the court, said: "The quality of the estate which Gregory C. took by the devise must be determined by the words of the will, taken together, and receiving a liberal construction, to effectuate the intention of the testator, as manifested in the will."

Further: "The words of the particular devise to Gregory, considered by themselves, certainly give no inheritance." And stating the rule of law to be, as contrasted with the popular understanding, "that such a devise, standing alone, without any aid in the construction from other parts of the will, would amount only to an estate for life in the devisee," added:

"But it is too well established and known to require argument or authority now to support the position, that devises and legacies in a will may receive a character, by construction and comparison with other legacies and devises in the same will, different from the literal and direct effect of the words made use of in such devise; [Cases were cited in note] and this because the sole duty of the court, in giving a construction, is to ascertain the real intent and meaning of the testator; which can better be gathered by adverting to the whole scope of the provisions made by him for the objects of his bounty, than by confining their attention to one isolated paragraph, probably drawn up without a knowledge of technical words, or without recollecting the advantage of using them."

The devise to Gregory C. was held to be of the fee.

*From these views it follows that the decree of the Court of Appeals must be and it is reversed, and the case is remanded to that court with directions to reverse the decree of the Supreme Court, and remand the case to that court with directions to enter a decree in accordance with this opinion.*

MR. JUSTICE PECKHAM dissents.