## JOSEPH BLAS COSTELLO, Plff.,

### *v.*

## PAULINO PUMARADA ET AL., Dfts.

---

San Juan, Law, No. 447.

Statement: Le Compte owned two houses. He had no children, but was married to Mercedes, who had a child (María del Carmen) by a former husband. Le Compte had a niece named Aurelia, who, during her uncle's lifetime, married Rodriguez, had two children, and with them removed to Cuba, and died in 1892, thirteen years after her uncle. Mercedes survived her husband seventeen years and Aurelia four years.

Costello v. Pumarada.

Maria del Carmen survived her mother, and sold to plaintiff. Le Compte left a will devising one house to his wife in fee, and making her residuary legatee. As to the other house, he provided that his wife should have the rents thereof for her life, and after that the house to belong to his niece, Aurelia. Held:

1. That the wife did not have the fee in the second house.
2. That the estate she took was one for life, with a vested remainder over to Aurelia, the niece.
3. That Aurelia's death before that of the wife did not give the latter a better title.
4. That Aurelia's heirs became the owners upon the death of Le Compte's wife.
5. The court will endeavor to ascertain the intention of the testator and apply that to the will.
6. "Sucesión legitima" means "issue," and not "heirs."
7. In ejectment the plaintiff must recover upon the strength of his own title.

Opinion filed January 31, 1908.

---

*Mr. Joseph Anderson,* attorney for plaintiff.

*Mr. Thomas D. Mott, Jr.,* attorney for defendants.

RODEY, Judge, delivered the following opinion:

This is an action of ejectment, wherein the plaintiff seeks to recover the possession of the south half of a building on San Justo street, in the city of San Juan, Porto Rico, from the defendants, and to have an accounting for the rental value thereof at $45 per month, with interest on the deferred payments for something like eleven years last past. The suit involves real estate valued anywhere from $4,750 to $6,000, and money damages anywhere from $10,000 to more than $15,000. The cause was commenced before the court and a jury at a regular term

on the 3d of May, 1907. After some exhibits were introduced and a number of witnesses had testified, it became apparent that the principal question in the case was one of law, with reference to the construction of a will; so counsel for both sides agreed and stipulated in writing that the jury should be discharged and the balance of the evidence introduced before the court alone, who should then pass upon the whole case. Thereafter, on November 18 and 20, 1907, the balance of the evidence was heard orally before the court, several additional exhibits were introduced, and the case closed. Counsel for both parties have filed carefully prepared briefs. The stenographic notes of the evidence were written out, the exhibits arranged, and now, after having read the testimony in full, and carefully examined the exhibits, we feel prepared to make the following statement of facts in the case:

The testator, Alejandro Cruz Le Compte, was born in the house in question in about the year 1800, and lived there practically all of his life. He was the son of a Frenchman from Havre de Grace, France, and of a Spanish or Porto Rican mother, of Porto Rico. He was first married to Doña Juana Loredo, who died in childbirth, the child dying with her, he having had no other children by her. Thereafter, he married one Mercedes Rodriguez, with whom he had no issue, and who was, at the time of the marriage, a widow with one child, the latter being then about ten years of age. This child's name, as she was baptised, was María del Carmen Josefa Colon, and she is the party through whom plaintiff claims. It appears that the testator also had a niece named Aurelia Le Compte de Gutierrez, and that these two girls lived with and were brought up by the testator and his said second wife, in the house in question, and

that the girls so continued to live there until their marriage respectively.

It further appears that the niece, Aurelia, got married to one Francisco Gutierrez in about the year 1868 or '69, and about a year thereafter gave birth to a male child who was named Arturo; and, when said child was about a year and a half old, the said Aurelia and her husband left for the city of Havana, in Cuba, and never returned. On the evidence it is disputed whether or not a second child, named Francisco Gutierrez, was born previous to her thus going to Havana or whether such child was born shortly after her arrival at Havana. It is fairly well established that this niece, Aurelia, died intestate in Cuba in the year 1892, some thirteen years after the death of the testator, leaving two children, neither of whom has ever, so far as the evidence shows, been in Porto Rico.

The testator, Alejandro Cruz Le Compte, made his will here at San Juan, Porto Rico, on the 18th day of December, 1878, and added a codicil thereto on the 21st day of June, 1879, a copy of which will and codicil in Spanish, with an English translation of each, will be found at the end of this opinion. He died, or at least the date of his burial was seven days later, on the 28th day of June of that year, at the age of seventy-nine years. His wife, Mercedes Rodriguez de Le Compte, outlived him seventeen years, and outlived the said niece about four years, and was buried on the 12th of May, 1896, at Ponce, Porto Rico, at the age of eighty-one years.

It is established beyond dispute that the testator was the undisputed owner of two houses on San Justo street, San Juan, Porto Rico, for a long time previous to and at the time of his death, and that for many years he had one of the houses rented to the predecessor in interest of the defendants, he and his fami-

Costello v. Pumarada.

ly living in the other portion; but that, some few years before
his death, the parties thus leasing the other portion of the build-
in from him required the whole of it, and a lease was made to
them of the whole double house, for $90 per month, he and his
family moving out and going to live first on Sol street and after-
wards on Luna street, in San Juan. The single building, in the
first instance, and the double building when it was joined, as
aforesaid, have ever since been used as a famous café and confec-
tionery establishment known as "La Mallorquina." A few
years after the death of the testator, the tenants thus occupy-
ing it purchased the north half of the building from the widow
of the testator. The tenants paid the rent to the testator in his
lifetime, first at the rate of $45 per month for half of the build-
ing, and later at the rate of $90 per month for the whole build-
ing, and after his death continued to pay the $90 per month
to his widow, both while she lived here at San Juan and after
she moved to Ponce, and continued so to do until they pur-
chased the north half of the same from her. Thereafter, they
continued to pay her $45 per month for the remaining or south
half of the house for a time, at least, but it appears that the
widow received the rent after she moved to Ponce through a
firm of merchants living there, to whom the tenants in San
Juan transmitted it monthly for her account. It further ap-
pears that shortly after the death of the testator, or perhaps
after the removal to Ponce of his widow, as aforesaid, the latter
instructed the tenants to remit $16 per month out of the $45
rental of the south half of the said building, which she had been
receiving monthly, to the niece, Aurelia, in Cuba, under a pro-
vision of the will that will be hereinafter referred to, which
they did and continued so to do thereafter, at least, up to the
time of Aurelia's death, in 1892. It does not, however, appear

Costello v. Pumarada.

in evidence whether or not the tenants, after the death of Aurelia, in Cuba, in 1892, and up to the time of the death of the old lady, in 1896, increased the remittance to the latter at Ponce again to $45 per month, or continued to pay her only the $29, but it is certain that the old lady did receive rent monthly from the tenants up to the time of her death.

Immediately or shortly after the death of the old lady at Ponce, in 1896, her daughter, the aforementioned María del Carmen Josefa Colon, who was then a widow, although she had in the meantime been married to one Rodriguez, made some effort to continue (as the sole heir of her said mother) the collection of this rent for the south half of the house, but without success. She states that she did not make much effort in that behalf, save efforts made through friends to have the tenants pay the rent to her, because, as she says, she is "an indifferent sort of a person," and intimates that she did not care to enter into controversies about the matter.

It is in evidence that, after the death of the testator, his widow could find no papers whatsoever among his effects to show his "dominio" ownership of the double building in question, although it does not appear whether such title papers were lost or what became of them. Of course, it was generally known in the community that her husband had been the owner of said building, having been born in it and lived in it nearly all his long life, besides having rented it for many years; so the widow, just before she sold the north half of the building, which was unquestionably hers under the will, procured, under date of May 27, 1885, before the local tribunals, a dominio title to that half, and was thus enabled to register and sell it, which she did under date of April 5, 1889.

Costello v. Pumarada.

It further appears that in November and December, 1899, the said tenants procured a local scrivener to apply for, and he actually secured, an expediente posesorio to the remaining or south half of the house in question, in the name of these two Gutierrez boys (Arturo and Francisco), sons and heirs of Aurelia, who had, as stated, died in Cuba in 1892. But plaintiff denies that such scrivener or these defendants had any right or authority to apply for such expediente, and the lawyer or scrivener, when put upon the stand, confessed that he knew nothing of the Gutierrez boys, but just did the work for the tenants on being paid a hundred-dollar fee for his services. In answer to such statement of the plaintiff that defendants had no authority to procure this "expediente posesorio," defendants' counsel, at the close of the case, offered to prove: "The authority direct from these people, that is, people who were authorized to get this expediente posesorio from these two brothers;" but the court closed the case, stating that, if it considered the same necessary, it would call for it later.

On the 22d of December, 1906, this María del Carmen Josefa Colon y Rodriguez, stepdaughter of the testator, and daughter and sole heir of his widow, as aforesaid, made a deed, for what it may be worth, of this south half of this building, together with the right to sue for and collect the uncollected rents for the ten or eleven years previous, to one José Jesus Pesquera Goenaga, and the latter in turn, twenty-seven days later, on January 18, 1907, transferred or deeded all the rights he thus obtained to the plaintiff, Joseph Blas Costello, who, after making a proper demand for the possession of the premises, and for payment of and an accounting as to the rents, and being refused in that behalf, filed this suit for a recovery and for damages, on the 4th day of February, 1907.

The answer of defendants, although filed in parts and crude in form, amounts to a general denial of the title or right to recovery at all of the plaintiff or his predecessors in interest, and sets up several statutes of limitation, including the five-year statute of limitation against the collection of the rents under § 1867, subdivision 2, of the local Civil Code.

Counsel for defendants, in open court, during the trial, and in his brief, virtually abandoned all these pleas, save that as to straight-out lack of title, and lack of right of possession in the plaintiff, and as to the accounting for rents, and claimed title to the property in the Gutierrez boys under the same will as plaintiff's predecessors in interest claim title under; and further, by reason of this fact, claims the right to the possession as against plaintiff, who, he says, must recover on the strength of his own title, and not on the weakness of that of defendants.

Counsel for both parties in the last analysis really admit that the rights of the parties turn upon the construction to be given to the 12th clause of the will; but that this clause should be construed in the light of the will as a whole, and particularly in the light of the 6th, 13th, 15th, and 17th clauses, and the first legacy clause of the codicil.

Counsel for plaintiff contends that the will should be construed in accordance with the Spanish law as it existed here in Porto Rico in 1878–9, at the time of the making of the will and the death of the testator. He cites us to Galindo, tomo 1, p. 309, to show that title passes by means of a will such as this is, but we do not see the importance of this, as that fact is not disputed, at least, as to the passing of title by such a will, if the phraseology used is sufficient. He also cites us, as tending to throw light upon and give rules for the construction of such

Costello v. Pumarada.

a will, to Galindo, tomo 2, pp. 135–6, and to Escriche, pp. 1189 and 1193, the latter commenting on the Partidas, leyes 7, 8, 9, tit. 4, y ley 34, tit. 9, part. 6. And also to Scaevola, tomo 13, pp. 328–330, 581 and 582, and art. 759, old Spanish code, or 747, new code, and quotes at great length in Spanish from all these works, with the hope of showing us that, in this case, the niece, Aurelia, took no vested interest, either at the date of the making of the will or at the time of the death of the testator, and that the will was therefore conditional and contingent, and argues that Aurelia's death before that of the life tenant or renter was a defeasance of the estate as to her. He also quotes from arts. 391, 392, of the mortgage law, and Galindo, tomo 6, p. 239, and from a decision of our own in this court in the recent case of Parés v. Reynes [2 Porto Rico Fed. Rep. 402], and from various sentencias of the Supreme Court of Spain, to show that an expediente posesorio has no effect save as a mere notice that the possession is adverse, and that a dominio title will be applied for at the proper statutory time. With this latter contention we have no dispute; and as to the former contention, with reference to the will being conditional if construed according to Spanish law, we do not see any reason for construing it according to that law rather than according to American law.

From a reading of the Spanish authorities thus to us cited, and from the investigations our work has caused us to make since going upon this bench, we fail to see, as we have in other opinions several times stated, that there is much, if any, fundamental difference between the rules of the civil and common law governing property rights generally, and particularly is this so regarding devises. This is not to be wondered at, when one considers that the civil law in reality is but the daughter and

Costello v. Pumarada. ,

the common law but the granddaughter of the ancient Roman law and institutes. Their basic principles are largely similar. Their differences are radical in but few instances, and those are well known, and are defined by the civil codes on the one side, and largely by customs and court decisions on the other. So we feel that, in supporting the views we shall here express by the decisions of our own courts, we shall not be departing from the settled law under either system.

Counsel for defandants quotes not a single authority in all his brief, confining himself in his argument to an effort to show the actual intention of the testator. He contends that it is manifest, particularly from the 12th clause of the will, that the testator, as to the half of the house that is here in question, separated the usufruct from the fee, and gave the whole of the usufruct for a time to his wife, while then at once devising the fee thereof to his niece, Aurelia.

It is not an easy matter to determine the settled law among American and English authorities as to the vesting of estates. It is perhaps not too much to say that on this subject the case law is more or less bewildering, and this is added to largely by the statutory efforts of several of the states of the Union to avoid the incongruities of the old English system regarding the great variety of estates that obtained in that country under its feudal and primogeniture systems, such as fees, feoffments, contingencies, remainders, reversions, etc. The Supreme Court of the United States, especially in the construction of wills, has, as we think, very sensibly avoided a good deal of this incongruity, and in many cases has simply rested its decision upon what was held to be the intention of the testator, as gathered from the will itself. We quote from the syllabi of several cases

in exemplification of this, and which also show the law that we think should be applicable here.

In the case of Eaton v. Brown, 193 U. S. 411, 48 L. ed. 730, 24 Sup. Ct. Rep. 487, that court held: "Courts do not incline to regard a will as conditional, where it reasonably can be held that the testator was merely expressing his inducement to make it, although his language, if strictly construed, would express a condition."

And again, in McCaffrey v. Manogue, 196 U. S. 563, 49 L. ed. 600, 25 Sup. Ct. Rep. 319, it was held that "the policy of the law in favor of the heir yields to the intention of the testator, if clearly expressed or manifested. The rule of law that a devise of lands without words of limitation or description gives a life estate only does not apply, and devises will be held to be of the fee, where it is plain that the testator's intention was to dispose of his whole estate equally between his heirs, and there is no residuary clause indicating that he intended passing less than all of his estate, and all of his heirs at law are devisees under the will."

Also in Rodriguez v. Vivoni, 201 U. S. 371, 50 L. ed. 792, 26 Sup. Ct. Rep. 475, which was a case that went up from this court, it was held that "remote explanations as to the use and meaning of a word will be rejected when the will offers upon its face a different and more obvious one. The words, 'sucesión, legitima,' in the will of a Porto Rican, held to mean 'issue,' and not 'lawful heirs.' "

And again, in Cruit v. Owen, 203 U. S. 368, 51 L. ed. 227, 27 Sup. Ct. Rep. 71, it was held that "a trust in a will in favor of testator's four daughters, and 'from and after their death' for the 'children of each of them,' and in which the idea of provision for the grandchildren is especially promi-

Costello v. Pumarada.

nent, will not be construed by rigidly giving plurality to the pronoun 'their,' and as creating a joint tenancy, so that the last surviving daughter takes all the income, to the exclusion of the children of her sisters, previously deceased."

And again, in Traverse v. Reinhardt, 205 U. S. 423, 51 L. ed. 865, 27 Sup. Ct. Rep. 563, it was held that "while the predominant idea of the testator's mind, when discovered, is to be heeded as against all doubtful and conflicting provisions which might defeat it, effect must be given to all the words of a will if, by the rules of law, it can be done; and the words, 'without leaving a wife or child or children' will not be construed as 'without leaving a wife and child or children,' notwithstanding a general dominant intent on the part of the testator that his real estate should descend only through his sons."

A perusal of Jarman on Wills, vol. 1, 6th ed. pp. 778 et seq., will convince anyone, we think, after reading the large number of cases there referred to and quoted from, that its doctrine is sound where it holds that where a testator, after giving an estate or interest for life to one person, proceeds to dispose of the ulterior interest in terms which, literally construed, would seem to make such ulterior interest perhaps depend on the fact of the prior interest taking effect, still it is considered that the testator merely uses these expressions of apparent contingency as descriptive of the state of events under which he conceives the ulterior gift will fall into possession. It will be seen that all of these authorities hold that in construing such wills the law is that the testator intended that the successive interests would take effect in the order in which they are expressed, and not with the design of making

### Costello v. Pumarada.

the actual vesting of the posterior gift depend on the beneficiary of it outliving the beneficiaries of prior estates.

See also Am. & Eng. Enc. Law, 2d ed. vol. 24, pp. 388 et seq., under heading "Vested Remainders," and the large number of cases cited. The doctrine referred to is well sustained by the cases of Thomson v. Ludington, 104 Mass. 193, and Goddard v. Whitney, 140 Mass. 92, 3 N. E. 30, and cases there cited. See also Kingman v. Harmon, 131 Ill. 176, 177, 23 N. E. 430, and cases cited.

In Croxall v. Shererd (Den ex dem. Croxall v. Sherrerd) 5 Wall. 268, 18 L. ed. 572, it was held that "a remainder is to be considered as vested when there is a person in being who would have an immediate right to the possession upon the ceasing of the intermediate particular estate. And it is never to be held contingent when, consistently with intention, it can be held vested."

In Doe ex dem. Poor v. Considine, 6 Wall. 458, 18 L. ed. 869, it was held: "Estates in remainder vest at the earliest period possible, unless there be a clear manifestation of the intention of the testator to the contrary. And, in furtherance of this principle, the expression 'upon the decease of A I give and devise the remainder,' construed to relate to the time of the enjoyment of the estate, and not the time of the vesting in interest."

See also McArthur v. Scott, 113 U. S. 340, 28 L. ed. 1015, 5 Sup. Ct. Rep. 652, where it was held that, although the legal estate was directly vested in trustees for the benefit of minors for a time certain, that those minors took the equitable estate *instanter* on the death of the testator.

In Thaw v. Richie (Thaw v. Falls) 136 U. S. 519, 34 L. ed. 531, 10 Sup. Ct. Rep. 1037, it was held that where "a testator devised all his real and personal estate to his widow

for life, in trust, for the equal benefit of herself and their two children or the survivors of them; and devised all the property remaining at the death of the widow, to the children or the survivor of them in fee; and, if both children should die before the widow, devised all the property to her in fee,— held, that the widow took the legal estate in the real property for her life; that she and the children took the equitable estate therein for her life, in equal shares; and that the children took vested remainders in fee, subject to be devested by their dying before the widow."

The difference between this latter case and the case at bar, as can be seen, is that the children were minors, and that the will specifically stated that, in case of their death, the estate should go to their mother.

In the case at bar it is shown by the will and the evidence that the testator brought up several young girls in his family, and in his will he provided for one of them, who was then in a convent, yet he never mentions his stepdaughter, María del Carmen, who, the evidence shows, was in Santo Domingo at the time. Neither must it be forgotten that the evidence shows that this niece, Aurelia, was not present in Porto Rico, either at the time the will was made or at the time of the death of the testator, because she had departed for Cuba some eight or nine years before. It is also manifest that the testator had her welfare in mind, as well as that of her children, because in the 12th clause of his will he gives the $16 per month out of the rents to her, "so that she may provide for her own support and that of her sons with the same." In the first granting clause of the codicil, evidently because Aurelia gets no income from the estate for two years after his death, he makes a direct legacy of 200 pesos in foreign currency to her. By the 13th

III. PORTO RICO—21.

clause of the will, it will be seen that he gives the north half of the house outright to his wife, and takes particular pains. to state that she may do as she pleases with it. From a careful examination of all the Spanish text in which it was drawn, of the 12th clause of this will, we are of opinion that the testator gave the fee to Aurelia and gave to his wife only a life estate in the rents of the half of the house in question, but. limited that by requiring her to give $16 per month out of it. to Aurelia, the grantee of the fee, payment beginning two years after his death. It seems to us that this is too plain for argument, and we might have decided the matter in very few words were it not that counsel have been so zealous that we felt we should give reasons for our holding.

The 17th clause of the will, which makes his wife his universal heir, or what we call residuary legatee, is the usual clause that is put in nearly all Spanish wills, and it referred at the time this will was made, as we think, to whatever other personal property was not disposed of in the will itself. He nowhere speaks of the fee in this property as going to his wife. Instead, it is "de los alquileres," that is, of the rents, that he speaks, and which his wife shall "goce y disfrute," that is, enjoy and possess or disfruit or gather from. In the 13th clause he states that, without prejudice to the rights granted. to his wife in the 12th clause, he leaves her, as stated, the north. half of the house "without restriction or reserve." And in the 12th clause he states that, upon the death of his wife, this house, that is, the south half, of which he was speaking, shall pass "without any restriction" to his aforesaid niece, Aurelia. This use of words clearly indicates that he had already disposed of it with restrictions, and therefore that Aurelia was. entitled, from the moment of his death, not alone to a vested

Costello v. Pumarada.

remainder, but to the actual fee, which she could have disposed of in her own lifetime, subject to the widow's rental right, and which, in the absence of having so done, went to her heirs, Arturo and Francisco Gutierrez, or whoever her heirs may in fact be, and did not revert to the widow of the testator under the clause making her universal heir of the testator, or in any other manner.

It would serve no useful purpose for us to comment at length upon the equities of the particular parties to this suit. We shall therefore only refer to them in this incidental way. Carmen, the daughter of the widow, is no blood relation to the testator, while his niece, Aurelia, of course is. Carmen's acquiescence for more than ten years in the refusal of the defendants to pay her rent that surely was hers if her contention is right is more or less of an indication that she, probably from the knowledge she had of the testator's intention, gained, may be, from himself in his lifetime, as well as from her mother, did not have much confidence in her claim, and the fact that, immediately before the bringing of this suit, she transferred her so-called rights to this Mr. Pesquera and through him to the plaintiff Costello, by deeds that, to say the least, show they are more or less speculative ventures on the part of both those purchasers, does not add strength to her claim. Of course there may have been other reasons for her acquiescence and long wait, and, if she is right in her contention, that should not militate against her; but we think that it would do violence to the phraseology of the will and to the settled law to hold in her favor. As said before, although she was brought up in the testator's house, and although she is a daughter of his wife, for whom he appears, from the language of the 6th and other clauses of his will, to have had deep affection, still he did not

Costello v. Pumarada.

even mention Carmen in the will, or make any bequest even in money or chattels to her, although he made, as will be seen, many bequests to other persons who it would be supposed ought not to have such a hold upon his affections as she should have had. The presumption might be indulged that he had no desire to make any bequest to her, or he may have thought that, as the heir of her mother, she would get more than her share of his estate, if any of it were left after the mother's death.

Were this a suit in equity and Carmen and Aurelia's heirs parties to the record, we would decree the fee in this property to the heirs of Aurelia Le Compte de Gutierrez; but it is a suit at law, in ejectment, and the defendants here, so far as we are at present informed, have no title at all to the premises, save such indefinite right, if any, as is given them by their mere possession. The plaintiff in such a suit must recover, if at all, on the strength of his own title, and not upon the weakness of his adversary's, and so we simply find for the defendants because the plaintiff has failed to make out his case. The judgment which shall be entered will therefore not vest any title in the defendants more than they now possess, if any. And that each of the parties shall pay their own costs.

Whether or not the premises escheat or have escheated to the island, if the heirs of Aurelia are all dead, is matter for another tribunal, should the facts warrant any proceeding in that regard. Let a judgment be entered as here indicated.

---

### TESTAMENTO Y CODICILO.

#### OTORGADO POR D. ALEJANDRO CRUZ LECOMTE Y RAMOS.

##### NÚMERO CUATROCIENTOS CUARENTA Y CINCO.

En la ciudad de Puerto Rico á los diez y ocho dias del mes de Diciembre

Costello v. Pumarada.

de mil ochocientos setenta y ocho años, ante mi, D. Demetrio Gimenez y Moreno, notario del colegio del territorio de esta provincia con residencia y estudio abierto en su capital en la calle de la Fortaleza, casa numero treinta y seis y testigos que al final se nominarán, compareció en su casa de habitación calle de la Luna, número sesenta y ocho, donde nos hallamos constituidos, D. Alejandro Cruz Lecomte y Ramos, cuya personalidad acredita con scédula de empadronamiento expedida el veinte y cinco de febrero del año actual por el Inspector Don Antonio Garabis, que me exhibe y le devuelvo; aseguro conocer al compareciente, haberme expuesto que se halla en el pleno uso de sus derechos civiles y con la capacidad legal necesaria para el presente otorgamiento y dijo: Que es natural y vecino de esta capital, hijo legítimo de Don Alejandro Francisco Lecomte, natural del Havre de Gracia, y de Da. María de la Paz Ramos, ambos difuntos de estado casado, y de setenta y siete años de edad; que se encuentra algo indispuesto de salud, aunque en su entero y cabal juicio, buena memoria y entendimiento natural, creyendo y confesando el altisimo é inefable misterio de la Santísima Trinidad Padre, Hijo y Espíritu Santo, tres personas distintas y un solo Dios verdadero y en todos los demas misterios y sacramentos que cree, predica y enseña Nuestra Santa Madre Iglesia C. A. R. en cuya verdadera fe y creencia ha vivido y protesta vivir y morir; temerozo de la muerte tan natural y precisa á toda viviente criatura como incierta su hora, para que cuando esta llegue no le encuentre desprevenido de una final disposición, y este cuidado temporal no le impida en tan críticos momentos dirijir sus fervientes oraciones al Creador, á fin de que lleve su alma á gozar de su beatífica presencia, con entero conocimiento y conciencia ha deliberado otorgar su testamento, última y postrimera voluntad en este protócolo público donde quiera se estienda del modo que sigue.

Primeramente.—Encomienda su alma á Dios Nuestro Señor que de la nada la creó y el cuerpo lo manda á la tierra de que fué formado, el cual hecho cadaver será amortajado como dispongan sus albaceas, dándosele sepultura en el cementerio de la población donde fallezca, á cuyo cuidado deja lo demas concerniente á funerales, misas y otros sufragios por bien de su alma, dándose aviso no obstante á la V. O. T. de Santo Domingo de que es hermano para los demas sufragios que por estatuto le correspondan.

Item Segunda.—Lega á las mandas forzosas de Jerusalem, medio real de plata á cada una por solo una vez y los tres pesos á la pia religiosa de su instituto, con lo que las separa de cualquiera derecho que pudieran tener á sus bienes.

Item Tercera.—Declara haber sido casado *in facie ecclesiæ* en primeras nupcias con Da. Juana Loredo, la cual falleció en los momentos de dar á luz una hija, falleciendo esta última tambien al mismo tiempo; y en segundas con Da. Mercedes Rodriguez, de cuyo matrimonio tampoco ha tenido sucesión.

Costello v. Pumarada.

Item Cuarta.—Declara que con anterioridad á los dos enlaces relatados tuvo un hijo natural llamado D. Pedro R. Lecomte, que falleció en el año mil ochocientos setenta.

Item Quinta.—Por la presente hace constar para que obre sus debidos efectos que ni una ni otra consorte llevaron bienes algunos á la sociedad conyugal, y que lo existente fué aportado por el otorgante.

Item Sexta.—Declara como bienes de su exclusiva pertenencia dos casas terreras de piedra y azotea, radicadas en esta ciudad en la calle de San Justo, ambas unidas bajo el número veinte y tres del gobierno; que estas dos casas se han refundado hoy en una y sirven para el establecimiento de botilleria y confiteria titulado "La Mallorquina" cuyos dueños por virtud de arrendamiento con ellos celebrado satisfacen un alquiler convenido por ambas fincas; y lo demas que declare su anunciada consorte, por cuya manifestación se estará y pasará sin que persona alguna aunque legitima sea pueda impugnarla.

Item Setima.—Declara no deber cosa alguna y recuerda se le adeudan cantidades, y por consiguente las que resulten en su contra, legitimadas que sean, quiere se satisfagan de lo mejor de sus bienes y se cobren las otras sirviendo estas de incremento á su caudal.

Item Octava.—Lega á Da. Ricarda, hija legítima del expresado D. Pedro R. Lecomte y de Da. Clara Alvarez, trescientos pesos. A los dos hijos naturales del citado D. Pedro y Da. Andrea Aspurias, nombrados Abelardo y Sergio, residentes en esta plaza, cien pesos. A Da. Teresa Lecomte de Rodriguez, cincuenta pesos. A las hijas huerfanas de D. José Bracero y de Da. Ines de Castro, nombradas Catalina, Dolores, Joaquina y Marcela y á los hijos varones de los mencionados conyuges D. José Nicolas y D. José Vicente, doscientos cincuenta pesos para todos por partes iguales, y á D. José Manuel Bracero, cien pesos.

Item Novena.—Lega á su ahijado de bautismo, D. Pedro Máximo Alejandro Otero y Mojica, hijo legítimo de D. Augustin y Da. María, cien pesos. A su otro ahijado de confirmación, D. Lorenzo Casanova, hijo legítimo de D. José Casanova y de Da. Merced Mauri, cincuenta pesos. A Monserrate Geigel, veinte pesos; á la hija de esta, Juana Bautista, treinta pesos, y á su ahijado, hermano de la que se acaba de nombrar, Fidel de Jesus, treinta pesos.

Item Decima.—Lega á Don Evaristo Chevremont, como un recuerdo de la buena amistad que le profesa, el lapicero y el baston de su uso.

Item Undecima.—Lega á su compadre D. José Casanova, como recuerdo de amistad, un péndulo de mesa, de bronce, con un niño parado encima del reloj.

Item Duodecima.—En atención á que carece de herederos forzosos por una parte y por otra, considerando que, al disponer de sus bienes, debe hacerlo en justa conciencia, recompensando cariños de familia y servicios prestados,

Costello v. Pumarada.

ordena y manda que la casa terrera de la calle de San Justo que da á la parte Sud ó lo que es lo mismo, hoy la mitad de los alquileres de ambas casas unidas por las razones expuestas en la clausula sesta, la goce y disfrute su esposa, Da. Mercedes Rodriguez de Lecomte, pero con la expresa condición de que, vencidos dos años fijos del fallecimiento del testador, desde ahí en adelante entregue por vía de legado á su sobrina, Da. Aurelia Lecomte de Gutierrez, la suma de diez y seis pesos mensuales para que atienda con ellos á su sustento y al de sus hijos en lo que proceda, gozando del resto por vía de usufructo su citada consorte, la cual fallecida, pasará esta casa sin restricción alguna á su ya citada sobrina, Da. Aurelia, como demostración de su cariño y verdadero afecto, sirviéndole de titulo de propiedad la presente clausula y los documentos que la acordaron al otorgante.

Item Decimatercera.—Sin perjuicio de los derechos que acuerda á su referida esposa el otorgante en la clausula anterior, viene en legarla por vía de dote ó como mejor proceda la otra casa contigua que da á la parte Norte de dicha calle de San Justo, esta sin restricción ni reserva, puesto que, despues del fallecimiento del testador, dispondrá la legataria de esa finca y de su importe como cosa suya, adquirida con justo y legítimo título y en virtud de real entrega por ser esta su expresa y terminante voluntad; percibiendo en su consecuencia y mientras se venza el arriendo lo que legalmente le corresponda.

Item Decimacuarta.—Recomienda muy eficazmente á su esposa y así espera que lo practicará conociendo sus bellos sentimientos en los cuales resalta la caridad, que tan pronto como toque salir del Colegio de San Ildefonso de esta ciudad á la huerfana nombrada Ricarda Lecomte por haber terminado su enseñanza, la acoja en su casa y la atienda y alimente como si fuera hija suya, siempre que su comportamiento así lo merezca.

Item Decimaquinta.—Manda que los legados que hace, con excepción del de Da. Aurelia y el de su consorte (duodecima y decimatercera clausulas) se satisfagan por su heredera cuando lo creyere conveniente y no se alteren en manera alguna ni se graven las fincas referidas, siendo que en cualquier epoca si alguno de los legatarios intentase establecer sobra ellos reclamaciones, por este solo hecho se entenderá ineficaz y nulo dicho legado, sin ningun valor, ni efecto, como si no se hubiera hecho, pasada su importancia á la heredera instituida.

Item Decimasesta.—Para cumplir y pagar lo convenido en este, su testamento, elige y nombra por sus albaceas, en primer lugar á su esposa, Da. Mercedes Rodriguez, en segundo, á su amigo D. Evaristo Chevremont, y en tercer lugar á D. Antonio Gamezo, á los tres juntos y á cada uno de por si et in solidum prorogándoles el año legal del albaceazgo á todo el mas tiempo que necesiten, confiriéndoles las mas amplias é ilimitadas facultades para que extrájudicialmente y no de otro modo, que prohibe de una manera terminante, procedan á cumplimentar sus disposiciones aquí consignadas, co-

Costello v. Pumarada.

brando lo que le debiesen y pagando lo que adeudare, otorgando los documentos que estimen convenientes, sin limitación de ningun género. Y si fuere preciso, elige á las mismas personas contadores partidores por el orden de sus nombramientos.

Item Decimasetima.—En el remanente liquido que quedare de todos sus bienes, derechos y acciones y futuras sucesiones, nombra por su heredera universal á su referida esposa, Da. Mercedes Rodriguez de Lecomte, para que, despues de la muerte del testador compareciente, se apodere de ellos y los haya, goce y herede con la bendición de Dios y su aprobación.

Item Decimaoctava.—Por la presente revoca y anula, deja sin ningun valor ni efecto, cuantos testamentos, codicilos, poderes para testar, cédulas, memorias y cualesquiera otra disposiciones análogas antes de ahora haya otorgado de palabra, por escrito ó en cualquiera otra forma, para que ningunas valgan ni hagan fe judicial ni extrajudicialmente, incluyéndose entre ellos el que formalizó ante el Escríbano D. Juan Basílio Nuñez el tres de Noviembre de mil ochocientos setenta y cuatro en esta capital, y solo valdrá el que hoy efectua ante el presente notario que manda se guarde, cumpla y ejecute inviolablemente como su última y deliberada voluntad ó en aquella vía y termino que mejor proceda con arreglo á derecho.

Y el otorgante, que á mi parecer y al de los testigos que van á nombrarse, se encuentra en la plenitud de sus facultades intelectuales, asi lo dijo, siendo testigos presentes y vecinos, mayores de edad y sin excepción legal para serlo, á quienes conozco, D. Juan A. Manzano, D. José Grau y Quiñones y D. José Antonio Gutierrez. Leida por el interesado y testigos, usando de su derecho, la ratificó el primero, suscribiéndola uno y otros ante mi, de todo lo que doy fe y la signo y firmo en testimonio de verdad. Alejandro Cruz Lecomte, Juan A. del Manzano, José A. Gutierrez, José Grau. Signado: Demetrio Gimenez y Moreno.

Yo, el indicado notario, presente fuí al acto anterior; en su fe y con remisión á la matriz número cuatrocientos cuarenta y cinco de mi protócolo perteneciente al año de mil ochocientos setenta y ocho, expido esta primera copia á la legataria Da. Aurelia Lecomte, que signo y firmo en San Juan de Puerto Rico, y un pliego de papel sello quinto y tres del undecimo á quince de Abril de mil ochocientos ochenta y cuatro. D. M. Demetrio Gimenez y Moreno.

## CODICILO.

NÚMERO DOSCIENTOS SESENTA Y DOS.

En la cuidad de Puerto Rico, á los veinte y un dias del mes de Junio de mil ochocientos setenta y nueve años, ante mi, D. Demetrio Giminez y Moreno,

Costello v. Pumarada.

notario del colegio del territorio de esta provincia, con residencia y estudio abierto en la calle de la Real Fortaleza, casa numero treinta y seis, y testigos que al final se nominarán, comparece.

D. Alejandro Cruz Lecomte y Ramos, de esta vecindad, natural de la misma, de estado casado, de setenta y siete años de edad, é hijo legítimo de D. Alejandro Francisco Lecomte y de Da. María de la Paz Ramos, difuntos, á quien doy fe le conozco, exhibiéndome su cédula de empadronamiento comprensiva del talon número 25, que le devuelvo, estando constituido en su domicilio, casa número 78 de la calle de la Luna, con aquellos en virtud de requirimiento, enfermo este, pero on su entero y cabal juicio y con la aptitud necesaria, dijo: que en diez y ocho de Diciembre de mil ochocientos setenta y ocho, otorgó su testamento ante el infrascrito notario, en el cual ha deliberado hacer algunas alteraciones y adiciones por vía de codicilo ó en la forma que mas haya lugar en derecho.

En su consecuencia otorga el presente codicilo, declarando y mandando lo siguiente:

Primero.—Lega á su sobrina carnal, Da. Aurelia Lecomte de• Gutierrez, la suma de doscientos pesos extranjeros.

Segundo.—Lega al hijo de D. José y Casanova, en vez de los cincuenta dados en su testamento, la suma de cien pesos.

Tercero.—Lega á su nieta, Da. Ricarda Lecomte, que reside en el Colegio de San Ildefonso, en vez de los trescientos pesos que le tiene señalados, la suma de cuatrocientos pesos.

Cuarto.—Lega á su sobrina nombrada, Da. Alejandrina de la Torre y Brasero, la suma de veinte y cinco pesos.

Quinto.—Igualmente lega á Da. Teresa Lecomte, cincuenta pesos mas de los que le tiene señalados.

Sexto.—Manda que D. José y Casanova sea su tercer albacea, quedando ineficaz el nombramiento de D. Antonio Gamero.

Setimo.—Ordena á sus herederos que, en el caso de vender las fincas en que se halla el establecimiento titulado "La Mallorquina," por igual precio sea preferido D. Antonio Vidal, que las posee en arriendo, y que, vencido este, acuerden prorogarlo en su beneficio, á fin de conservarlas mientras quedan.

Octavo.—Estos legados correrán la misma suerte que los hechos en su testamento.

Asi lo otorgó, queriendo que todo lo exquesto valga en la vía y forma que mas haya lugar en derecho, mandando se guarde y cumple inviolablemente; revoca y anula dicho testamento en todo lo que fuere contrario á este codicilo, y en lo que sea conforme y en todo lo demas lo deja en plena fuerza y vigor, ratificándolo para que se tenga por su última y deliberada voluntad, siendo testigos presentes y vicinos mayores de edad y sin excepción legal para serlo D. Jesus de Goicoechea, D. Francisco Garcia Rivera.

Costello v. Pumarada.

y D. Lorenzo Camuñas, á quienes doy fe conozco. Leido por mí en alta voz al otorgante y testigos, se ratificó aquel, firmándolo todos ante mi, de todo lo que doy fe. Alejandro Cruz Lecomte, Lzo. Camuñas y Alvarez, Jesus de Goicoechea, Fco. Garcia Rivera. Signado, Demetrio Gimenez Moreno

Yo, el dicho notario, presente fuí al acto anterior, en su fe y con re misión á la matriz número doscientos sesenta y dos de mi protócolo pertene- ciente al año mil ochocientos setenta y nueve, libro esta primera copia á la legataria Da. Aurelia Lecomte, que signo y firmo en San Juan de Puerto Rico, y un pliego de papel sello quinto á quince de Abril de mil ochocientos ochenta y cuatro. D. M. Demetrio Gimenez.

---

## WILL AND CODICIL .

### EXECUTED BY D. ALEJANDRO CRUZ LECOMTE Y RAMOS.

#### NUMBER FOUR HUNDRED AND FORTY-FIVE

In the city of Porto Rico, on the eighteenth day of December, 1878, be- fore me, D. Demetrio Gimenez y Moreno, notary of the college of the terri- tory of this province, with residence and office open in its capital on Fort- aleza street, house number thirty-six, and the witnesses that will be named at the end, appeared at his house, Luna street, number 68, where we met D. Alejandro Cruz Lecomte y Ramos, whose identity he proves with his cédula de empadronamiento (personal certificate) issued on the 25th of February of the present year, by the Inspector Don Antonio Garabis, which he exhibits to me, and I return to him; I assure that I know the party, that he has stated to me that he is in the full use of his civil rights and with the necessary legal capacity for the execution of this instrument, and said: That he was born in and is a resident of this capital, the legitimate son of Don Alejandro Francisco Lecomte, native of Havre de Gracia and of María de la Paz Ramos, both deceased; that he is married and of seventy- seven years of age; that he is somewhat indisposed in health, although in full control of his reasoning powers, good memory and natural under- standing, believing and confessing the very high and ineffable mystery of the Holy Trinity, Father, Son, and Holy Ghost, three distinct persons and only one true God, and all other mysteries and sacraments that are believed, preached, and taught by our Holy Mother, the Roman Catholic Church, in which true faith and belief he has lived and intends to live and die; afraid of death, natural and inevitable for all living creatures, but uncertain as to its hour, and so that when it comes it may not find him unprepared of a final will, so that this temporal matter might

not prevent him, in such critical moments, from directing his fervent prayers to the Creator, and so that, at the end, his soul may be brought to His blessed presence, so, with full knowledge and conscience, he has decided to make this his testament, being his last will, and that it may be in this public protocol, where he wants it to be made as follows:

First.—Commits his soul to God, our Lord, who created it from nothing, and who returns the body to the earth of which it was formed, which, after he dies, will be shrouded appropriately as his administrators may direct, burying him in the cemetery of the town where he dies, and to whose care he leaves all other matters concerning his funeral, masses, and other religious services for the good of his soul, giving notice, notwithstanding, to the V. O. T. of Santo Domingo, of which he is a brother, for the other religious services which might correspond according to the regulations.

Second.—He leaves to the obligatory legacies of Jerusalem "medio real" to each of them separately once, and the three pesos to the conntributions of its institute, by which he deprives them of any other right they might have to his estate.

Third.—He declares that he was married in facie ecclesiæ for the first time with Doña Juana Loredo, who died in childbirth, the child dying also at the same time, and for the second time with Doña Mercedes' Rodriguez, from which marriage there has been no issue either.

Fourth.—He declares that before the two marriages aforesaid he had an illegitimate son, named D. Pedro R. Lecomte, who died in the year 1870.

Fifth.—By these presents he makes it known that neither one nor the other of his said wives brought any property or estate to the conjugal partnership, and that all the property existing was brought by the party executing this instrument.

Sixth.—He declares as property pertaining exclusively to him two one-story stone houses with flat roofs, located in this city in San Justo street, both united under number twenty-three of the government; that these two houses have been now merged into one and serve for the establishment of bottling and confectionery called "La Mallorquina," the owners of which, by virtue of a lease entered into with them, pay an agreed rent for both properties; and whatever else may be declared by his aforesaid wife, which declaration shall be accepted and submitted to, and cannot be controverted by any person, no matter its legitimacy.

Seventh.—He declares that he does not owe anything, but remembers that he has some credits, and therefore those which may be found against him, after proving their legitimacy, he desires that they be paid out of his capital, and that they collect the others and add them to his estate.

Eighth.—He leaves to Da. Ricarda, the legitimate daughter of the said D. Pedro R. Lecomte and of Da. Clara Alvarez, 300 pesos. To the

two illegitimate sons of the said D. Pedro y Da. Andrea Aspurias, named Abelardo and Sergio, residents of this capital, 100 pesos. To Da. Teresa Lecomte de Rodriguez, 50 pesos. To the orphan daughters of Don José Bracero and Da. Ines de Castro, named Catalina, Dolores, Joaquina, and Marcela, and to the sons of the said spouses, D. José Nicolas and D. José Vicente, 250 pesos for all of them in equal parts, and to D. José Manuel Bracero, 100 pesos.

Ninth.—He leaves to his godson, D. Pedro Máximo Alejandro Otero y Mojica, the legitimate son of D. Agustin and Doña María, 100 pesos. To his other godson of confirmation, D. Lorenzo Casanova, the legitimate son of José Casanova y de Doña Merced Maury, 50 pesos. To Monserrate Geigel, 20 pesos, to her daughter, Juana Bautista, 30 pesos, and to his godson, brother of the aforementioned, Fidel de Jesus, 30 pesos.

Tenth.—He leaves to Don Evaristo Chevremont, as a remembrance of friendship, the pencil holder and cane that he uses.

Eleventh.—He leaves to his compadre, D. José Casanova, as a remembrance of friendship, a desk clock with a child standing on it.

Twelfth.—In view of the fact that he has no forced heirs, on the one hand, and, on the other hand, considering that, in disposing of his property, he should do it in just conscience, rewarding family affections and services rendered, he orders and directs that the one-story house on San Justo street, which is situated to the south, or, what is now the same, one-half of the rent of both houses, united by the reasons set forth in clause sixth, shall be enjoyed and possessed by his wife, Da. Mercedes Rodriguez de Lecomte, but under the express condition that, upon expiration of two complete years from the death of the testator, from that time on, she shall deliver, by way of legacy, to his niece, Da. Aurelia Lecomte, the sum of 16 pesos monthly, so that she may provide for her own support and that of her sons with the same, as deemed best, the balance to be enjoyed by his said wife by way of usufruct, after whose death this house will pass without any restriction to his said niece, Da. Aurelia, as a demonstration of his love and true affection, the present clause serving as her title of ownership in connection with the documents by which the property was acquired by the testator.

Thirteenth.—Without prejudice to the rights granted to his said wife by the testator in the preceding clause he hereby leaves her as by way of dowry, or as deemed best, the other adjoining house at the north side of said San Justo street, this without restriction nor reserve, inasmuch as, after the death of the testator, the legatee shall dispose of said property and its results as her own, acquired by her with just and proper title and by virtue of actual delivery, this being his express wish, receiving in consequence thereof, while the lease is in effect, whatever she may be legally entitled to.

Costello v. Pumarada.

Fourteenth.—He strongly recommends that his wife, and hopes she will do it, knowing her tender feelings, among which is charity, that as soon as the said orphan girl, Ricarda Lecomte, shall leave San Ildefonso College, of this city, having completed her learning, that she take her into her house and provide for her, the same as if she were her own daughter, providing her behaviour merits it.

Fifteenth.—He orders that the legacies he makes, with the exception of that of Da. Aurelia and that of his wife (12th and 13th clauses), be satisfied by his heir, when she finds it convenient, and that the aforesaid houses be not altered or encumbered, it being understood that if, at any time, any of the legatees attempt to establish any claim on them, by this fact alone the said legacy shall be considered to be null and void, without value or effect, as if it had not been made, its value passing to his herein-appointed heir.

Sixteenth.—For the carrying out of the provisions of this testament, he chooses and names as his administrators in the first place his wife, Doña Mercedes Rodriguez, in the second, his friend, Don Evaristo Chevremont, and, in the third place, Don Antonio Gamero, the three together and each of them by himself "et in solidum" prolonging the legal year of administration to such time as they may need, conferring upon them the most ample and unlimited powers to extrajudicially, and in no other way, for he expressly prohibits it, to proceed to fulfil his dispositions herein stated, collecting what he is owed and paying what he owes, making all the documents that may be necessary, without limitations of any kind. And, if it is necessary, he chooses the same persons as appraisers and partitioners, in the order of their nomination.

Seventeenth.—As to the remainder of all his property rights and actions and future successions, he nominates as his universal heir, his said wife, Da. Mercedes Rodriguez de Lecomte, to enter into the possession of them after the death of the testator and hold, enjoy, and inherit them, with the blessing of God and his approval.

Eighteenth.—By these presents he revokes and annuls, leaves without value or effect, all wills or testaments, codicils, powers to make wills, cédulas, memorias, and any other similar dispositions that he may have heretofore made, either by word of mouth, writing, or in any other way, so that no one of them be of any value, either judicially or extrajudicially, including among them the one he made before the "escríbano" D. Juan Rasilio Nuñez, on November 3rd, 1874; and that the one he makes to-day before the present notary shall be the only one of any value, which he orders to be kept, complied with, and executed as his last and deliberate will, and in that way and in that time as shall be best according to law.

And the testator, who, in my opinion and in that of the witnesses, that are to be mentioned, is in the enjoyment of his intellectual facul-

Costello v. Pumarada.

ties, said so, being present as witnesses of age, and without legal exception, whom I know, D. Juan A. Manzano, D. José Grau y Quiñones, and Don José Antonio Gutierrez. Read by the testator and witnesses, exercising their rights, the first ratified it, subscribing it, one and the others before me, of all of which "doy fe" and sign in testimony of truth. Signed, Alejandro Cruz Lecomte, José A. Gutierrez, Juan A. del Manzano, José Grau, Demetrio Gimenez y Moreno.

## CODICIL.

### NÚMBER TWO HUNDRED AND SIXTY-TWO.

In the city of Puerto Rico, on the twenty-first day of the month of June, in the year 1879, before me, D. Demetrio Gimenez y Moreno, notary of the college of the territory of this province, with residence and office open in the Real Fortaleza street, house number 36, and witnesses hereinafter mentioned, appear:

D. Alejandro Cruz Lecomte y Ramos, of this neighborhood, native of the same, married, of seventy-seven years of age, and legitimate son of D. Alejandro Francisco Lecomte and Da. María de la Paz Ramos, deceased, whom I certify are known to me, exhibiting their cédula of empadronamiento, consisting of stub number 25, which I return to them, being present at his domicil, house number 78 of Luna street, together with them where we were summoned, he being sick, although in full control of his reasoning powers and with the necessary qualifications, stated: that on December 18th, 1878, executed his will before the undersigned notary, in which he has decided to make some alterations and additions by way of codicil, or in the best manner according to law.

In consequence thereof, executes the present codicil, declaring and directing the following:

First.—He leaves to his niece, Da. Aurelia Lecomte de Gutierrez, the sum of 200 pesos, foreign currency.

Second.—He leaves to the son of D. José y Casanova, instead of the 50 bequeathed in his will, the sum of 100 pesos.

Third.—He leaves to his granddaughter, Da. Ricarda Lecomte, who lives in the College of San Ildefonso, instead of the 300 pesos which he has assigned to her, the sum of 400 pesos.

Fourth.—He leaves to his niece aforesaid, Da. Alejandrina de la Torre y Brasero, the sum of 25 pesos.

Fifth.—He likewise leaves to Da. Teresa Lecomte, **50 pesos in addition** to those already assigned to her.

Costello v. Pumarada.

Sixth.—He orders that D. José Y. Casanova be his third administrator, annulling the appointment of D. Antonio Gamero.

Seventh.—He directs his heirs that, in the event of selling the properties wherein the establishment called "La Mallorquina" is located, that, for an equal price, the holder of the lease, D. Antonio Vidal, be preferred, and that, upon the expiration of the lease, they should agree to extend it for his benefit, in order to keep these properties as long as they can.

Eighth.—These legacies shall follow the same course as those made in his will.

It was so executed, it being his wish that all that has been set forth be valid in the way and manner most proper according to law, directing that it be kept and fulfilled without violation; revokes and annuls said will in all that may be in conflict with this codicil, leaving in full force and vigor what agrees with the same, and all the rest, which he ratifies, so that it be held as his last and deliberate wish, before the witnesses, residents, of age and without legal exception therefor, D. Jesus de Goicoechea, D. Francisco Garcia Rievra. Signed, Demetrio Gimenez Moreno.

I, the aforesaid notary, present, attended the preceding act, of which I certify and refer to the original number 262 of my protocol, belonging to the year 1879. I issue this first copy to the legatee Da. Aurelia Lecomte, which I sign and rubricate in San Juan de Puerto Rico April 15th, 1884, written on a sheet of paper, seal five. D. M. Demetrio Gimenez.